

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00483-CV

**THE TOWN OF BARTONVILLE PLANNING AND ZONING BOARD OF ADJUSTMENTS** and Kristi Gilbert,
Appellants

v.

**BARTONVILLE WATER SUPPLY CORPORATION**,
Appellee

From the 393rd District Court, Denton County, Texas
Trial Court No. 2012-60272-393
Douglas M. Robison, Judge Presiding

### OPINION ON DENIAL OF APPELLEE'S MOTION FOR REHEARING

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  June 12, 2013

REVERSED AND REMANDED; MOTION FOR REHEARING DENIED

On March 27, 2013, we issued an opinion reversing the trial court's judgment and remanding the cause to the trial court. *See Town of Bartonville Planning & Zoning Bd. of Adjustments v. Bartonville Water Supply Corp.*, No. 04-12-00483-CV, 2013 WL 1222939 (Tex. App.—San Antonio Mar. 27, 2013). Bartonville Water Supply Corporation ("BWSC") has filed a motion for rehearing. We deny the motion for rehearing. However, to clarify our opinion, we

withdraw our prior opinion and judgment, and substitute this opinion and judgment in their place.

This is an appeal from the trial court's judgment reversing the decision by the Town of Bartonville Planning and Zoning Board of Adjustments to deny BWSC's application for a building permit for the construction of a water tower. On appeal, the Board argues that in the underlying writ of certiorari proceeding, the trial court exceeded its subject matter jurisdiction by finding that the restrictions in the Town's zoning ordinance were unenforceable against the water supply corporation and by issuing a building permit for the construction of the water tower. Because we agree that the trial court exceeded its subject matter jurisdiction, we reverse and remand.

## BACKGROUND

BWSC is a water supply corporation operating under chapter 67 of the Texas Water Code. Having determined that it needed a new water tower to meet its obligation of providing a continuous and adequate supply of water pursuant to section 291.93 of the Texas Administrative Code, BWSC began constructing a water tower within the Town of Bartonville ("the Town"). BWSC then received a letter from the Town, demanding that BWSC cease construction because it had failed to obtain a building permit.[1] In response, on June 1, 2011, BWSC filed a petition for declaratory relief and writ of mandamus in the 211th Judicial District Court for Denton County, Texas. This suit for declaratory relief is not the subject of this appeal.

---

[1] The record reflects that in an October 24, 2011, letter addressed to Jim Leggieri, General Manager of BWSC, Debbie Millican, the Town Administrator, advised BWSC that on two previous occasions, BWSC had sought to obtain "the required Conditional Use Permit for location of a water storage tower at the Neely Road site" and that "[o]n these two occasions, after public hearing, the Town Council voted to deny the issuance of the Conditional Use Permit." Millican explained that in the absence of the issuance of a conditional use permit, the proposed water storage "would be, if built, an illegal use at the Neely Road site." Thus, Millican stated that the "Town respectfully requests that such use and proposed construction cease and desist."

In response to the suit for declaratory relief, the Town filed a plea to the jurisdiction. Before the plea to the jurisdiction was heard, on December 7, 2011, BWSC decided to file an application for a building permit with the town's secretary and building official, Kristi Gilbert, for construction of an elevated water storage facility ("the water tower") on the property in question. Thus, there were now two legal proceedings: one in district court for declaratory relief and an administrative application for a building permit filed with the Town's secretary.

On December 12, 2011, Gilbert denied BWSC's application for a building permit because the site for the proposed water tower was zoned RE-2, and the proposed water tower was not an approved use or structure within that zoning designation. The Town's zoning ordinance requires a conditional use permit for the construction of a water tower within that zoning district, and BWSC had not been issued a conditional use permit for the construction of a water tower.

BWSC appealed Gilbert's denial of the building permit application to the Town's Board of Adjustment. At a public hearing on February 2, 2012, the Board of Adjustment considered the appeal. During the hearing, BWSC argued that Gilbert erred in denying its application because she should have determined that BWSC is not subject to the Town's zoning ordinance. The Town's attorney pointed out to BWSC that Gilbert had no authority to make such a determination and that neither did the Board of Adjustment. The Town's attorney emphasized that such a question was for a court of competent jurisdiction. After considering the evidence and argument of counsel, the Board of Adjustment denied BWSC's appeal and upheld Gilbert's decision.

BWSC then filed a petition for writ of certiorari in district court, requesting review of Gilbert's and the Board of Adjustment's decision. In its petition, BWSC argued that Gilbert and

the Board of Adjustment erred in applying Bartonville's zoning regulations to BWSC for two reasons:

1. "For the Town of Bartonville to regulate BWSC, Bartonville must have express authority for the regulation it seeks to impose. As will be discussed below, the Texas Water Code makes clear that Bartonville has no express authority to impose its zoning regulations on BWSC."

2. "Additionally, the Texas Water Code, in the same provisions that limit municipal authority over retail public utilities such as BWSC expressly authorizes retail public utilities, notwithstanding any other law, to extend their services and to construct the facilities necessary for that extension within the corporate limits of towns they serve for the purpose of providing adequate water services to their members. BWSC's planned elevated water storage facility will be constructed so that BWSC can provide adequate service to its members."

In its petition for writ of certiorari, BWSC concluded that "[b]ecause the Bartonville Board of Adjustment failed to analyze or apply the law properly, it has abused its discretion and the Bartonville Board of Adjustment's order upholding Ms. Gilbert's wrongful decision is illegal and should be reversed." BWSC's petition for certiorari argued that the order by the Board of Adjustment "is illegal because the law and the evidence presented at the Board of Adjustment hearing allows for only one conclusion – the zoning ordinance on which [Gilbert], the town secretary, was relying as a basis for her denial of BWSC's application for building permit does not apply to, and cannot be enforced against, BWSC." That is, the petition asserted that the Board of Adjustment "either failed to correctly analyze the law to determine whether the building permit could be denied based on the applicability of Bartonville's zoning ordinance to BWSC, a retail public utility, or arbitrarily decided to ignore the applicable law." "Whatever the reason for the Bartonville Board of Adjustment's erroneous order, when a board of adjustment clearly fails to analyze or apply the law properly, it has abused its discretion and the Board of Adjustment's resulting order is illegal."

At the hearing on the petition for writ of certiorari, the trial court expressed concern about the parallel declaratory judgment proceeding, noting that "the more serious question for this court" was whether he or the judge in the declaratory judgment proceeding should make the determination. BWSC then offered to walk over to the other court and nonsuit the declaratory judgment proceeding.[2] After BWSC nonsuited the declaratory judgment action pending in the other court, the trial court ruled that under the law, "the Water Supply Corporation does have the ability to select its own sites unfettered by restraint from the Town." The court stated, "I don't think they need to get a building permit." Counsel for BWSC then told the court, "Your Honor, the judgment before the Court overturns the decision of the building official and issues the building permit, and that's the relief we requested and that's the judgment that we have tendered to the Court and what we're requesting the court to enter." Counsel for the Board of Adjustment objected to the court "ordering the building official to order a permit you said they don't have to get." The court replied, "Rechange it. I think you can construct it without the building permit. That's my point." Counsel for BWSC stated in response, "I would agree with the Court, but I don't know that I want to, on behalf of my client, bite off that much apple. In other words, the Town might be able to tell us what color to paint or something in that regard and I don't want to – this Court's judgment to be reversed because –" The court interrupted, "Because of aesthetics?" Counsel for BWSC replied, "Yeah, exactly, exactly." The court then stated,

> Okay. I will tell you what I'm going to do. I am – I'm going to sign the judgment as tendered. I expressed my reasons, previously. But I think it's broad enough to be not able to request a building permit but – and you brought up the point that aesthetics may apply. So taking that into account, I'm going to compel you to issue the building permit. And we'll fight the battle as to whether you can even compel aesthetics. I guess that will be the next go-round.

The trial court then signed a final judgment, which, in pertinent part, states the following:

---

[2] We note that after the declaratory judgment proceeding was nonsuited, the petition for writ of certiorari in the instant case was not amended, and the petition for writ of certiorari does not plead a declaratory judgment action.

- The Court further finds that the Town Secretary/Building Official erred when she decided and determined that the zoning ordinance in question was enforceable against BWSC as it relates to BWSC's application and failed to issue a building permit to BWSC.

- The Court finds that the Board of Adjustment failed to properly analyze and apply the law when it considered and denied BWSC's appeal of the decision and determination of the Bartonville Town Secretary/Building Official to deny BWSC's application and her refusal to issue a building permit in response to said application.

- The Court finds that the Bartonville Board of Adjustment abused its discretion with regard to the above factual findings and interpretations and applications of state law when it considered and denied BWSC's appeal.

- Finally, the Court finds that because the Board of Adjustment abused its discretion and failed to properly analyze and apply the law that the Board of Adjustment Order is illegal.

- It is therefore ordered, adjudged, and decreed that the Board of Adjustment Order is reversed and that BWSC's application is granted and the building permit for the elevated water storage structure that is the subject of the BWSC application is hereby issued.

The Board of Adjustment and Gilbert (collectively "the Board") appealed.

## TRIAL COURT ACTING OUTSIDE ITS JURISDICTION

In its first issue, the Board argues that the trial court exceeded its subject matter jurisdiction in the petition for writ of certiorari proceeding. The Board emphasizes that a decision by the Board is subject to limited review by a district court. And, because the Board itself has limited jurisdiction, a district court's review of the Board's decision is likewise limited. In this case, the Board argues that it has no legal authority to determine whether the Water Code "trumps" the Bartonville ordinance, but only has authority to ensure that ordinances are followed. Thus, the Board argues that the trial court exceeded the scope of its limited review by determining that the Water Code, indeed, "trumped" the Bartonville ordinance and that BWSC was not subject to the Bartonville ordinance.

"A board of adjustment derives its power from both the statute and the city ordinance establishing it and defining its local function and powers." *City of San Antonio v. El Dorado*

*Amusement Co.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied). Section

211.003(a) of the Texas Local Government Code, "Zoning Regulations Generally," provides that

the governing body of a municipality may regulate the following:

1. the height, number of stories, and size of buildings and other structures;

2. the percentage of a lot that may be occupied;

3. the size of yards, courts, and other open spaces;

4. population density;

5. the location and use of buildings, other structures, and land for business, industrial, residential, or other purposes; and

6. the pumping, extraction, and use of groundwater by persons other than retail public utilities, as defined by section 13.002, Water Code, for the purpose of preventing the use or contact with groundwater that presents an actual or potential threat to human health.

TEX. LOC. GOV'T CODE ANN. § 211.003(a) (West 2008). Section 211.004 requires zoning

regulations to be adopted in accordance with a comprehensive plan and to be designed to:

1. lessen congestion in the streets;

2. secure safety from fire, panic, and other dangers;

3. promote health and the general welfare;

4. provide adequate light and air;

5. prevent overcrowding of land;

6. avoid undue concentration of population; or

7. facilitate the adequate provision of transportation, water, sewers, schools, parks, and other public requirements.

*Id.* § 211.004. Section 211.005(a) allows the governing body of a municipality to divide the

municipality into districts and permits the governing body "to regulate the erection, construction,

reconstruction, alteration, repair, or use of buildings, other structures, or land" within each

district. *Id.* § 211.005(a). "Zoning regulations must be uniform for each class or kind of building

in a district, but the regulations may vary from district to district." *Id.* § 211.005(b). "The regulations shall be adopted with reasonable consideration, among other things, for the character of each district and its peculiar suitability for particular uses, with a view of conserving the value of buildings and encouraging the most appropriate use of land in the municipality." *Id.* § 211.005(b). Pursuant to these sections, the Town of Bartonville adopted its zoning ordinance, and it is undisputed that the proposed water tower and its use do not comply with the Town's zoning ordinance.

The Town of Bartonville Planning and Zoning Board of Adjustments is an entity created pursuant to section 211.008 of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. § 211.008 (West 2008). As noted previously, a "board of adjustment derives its power from both the statute and the city ordinance establishing it and defining its local function and powers." *El Dorado*, 195 S.W.3d at 250. Subsection (a) of Section 211.009, titled "Authority of Board," grants a board the power to do the following:

> (1) hear and decide an appeal that *alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of this subchapter or an ordinance adopted under this subchapter*;
>
> (2) hear and decide special exceptions to the terms of a zoning ordinance when the ordinance requires the board to do so;
>
> (3) authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is one; and
>
> (4) hear and decide other matters authorized by an ordinance adopted under this subchapter.

*Id.* § 211.009(a) (emphasis added).

On rehearing, BWSC argues the Board had authority to make a determination in this case pursuant to Subsection (a)(1) of Section 211.009 because BWSC alleged that "an administrative official made an error in the enforcement of a zoning ordinance by applying the ordinance to

BWSC." We disagree that Subsection(a)(1) granted the administrative official and thus the Board authority to determine that the Water Code "trumped" the Bartonville ordinance and thus that the Bartonville ordinance was wholly unenforceable as to BWSC.

Subsection (b) of Section 211.009 provides that

[i]n exercising its authority under Subsection (a)(1), the board may reverse or affirm, in whole or in part, or modify the administrative official's order, requirement, decision, or determination from which an appeal is taken and make the correct order, requirement, decision, or determination, and for that purpose the board has the same authority as the administrative official.

*Id.* § 211.009(b). Section 211.011 allows a party to appeal a board's decision to a district court, county court, or county court at law by filing a verified petition stating that the decision of the board of adjustment is "illegal in whole or in part and specifying the grounds of the illegality." *Id.* § 211.011(a). "On the presentation of the petition, the court may grant a writ of certiorari directed to the board to review the board's decision." *Id.* § 211.011(c). "If at the hearing the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take evidence as directed." *Id.* § 211.011(e). "The court may reverse or affirm, in whole or in part, or modify the decision that is appealed." *Id.* § 211.011(f). Thus, a "district court sits only as a court of review, and *the only question that may be raised by a petition for writ of certiorari is the legality of the board's order.*" *Sw. Paper Stock, Inc. v. Zoning Bd. of Adjustment*, 980 S.W.2d 802, 805 (Tex. App.—Fort Worth 1998, pet. denied) (emphasis added). That is, "[a]s a quasi-judicial body, the decisions of a zoning board are subject to appeal before a state district court upon application for a writ of certiorari," and "the only question before it is the legality of the zoning board's order." *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006). "To establish that an order is illegal, the party attacking the order must present a 'very clear showing of abuse of discretion.'" *Id.* (quoting *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 71 (1945)). "A zoning board abuses its discretion

if it acts without reference to any guiding rules and principles or clearly fails to analyze or apply the law correctly." *Id.*

In its petition for writ of certiorari and on appeal, BWSC argued that the Board's order was illegal because the Board should have determined that its own zoning ordinances do not apply to BWSC because of provisions in the Texas Water Code. The Board replies that it had no authority to make any such determination. It only has authority to enforce the ordinance.

As a quasi-judicial body, a board of adjustment has no statutory power to legislate. *Bd. of Adjustment v. Willie*, 511 S.W.2d 591, 593 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.). "It is restricted in its decisions to the powers vested in it by the legislature and city council." *Id.* "A board of adjustment must act within the strictures set by the legislature and the city council and may not stray outside its specifically granted authority." *El Dorado Amusement Co.*, 195 S.W.3d at 250. "*Any action exceeding this authority is null and void and subject to collateral attack.*" *Id.* (emphasis added).

Pursuant to the Bartonville Code of Ordinances, "[a]n application for a building permit is required within the Town limits, or where authorized by a development agreement, in the Town's extraterritorial jurisdiction, prior to placement, construction or alteration of a building or structure." It requires a person to first submit an application to the building official (here Gilbert), who shall "approve, conditionally approve or deny the application for a building permit." According to the Code of Ordinances, the building official shall apply the following criteria in deciding the application for a building permit:

1. The application generally conforms to all prior approved development applications for the property and any variance petition authorizing variation from the standards otherwise applicable to the permit.

2. The location of the structure on the property is in accordance with all prior approved development applications.

3. The proposed plan for construction or alteration conforms to the Building Code and other applicable construction codes adopted by the Town.

4. All applicable fees, including impact fees, have been paid.

The Code of Ordinances provides that "[a]ny interested person may appeal the building official's decision on the building permit application to the Zoning Board of Adjustments." The Zoning Board of Adjustments "shall decide the appeal in accordance with Article 3.1 of the Town of Bartonville's Code of Ordinances." Article 3.1 of the Code of Ordinances, also known as the "town building code," sets out building codes adopted by the Town. Thus, neither the Building Official (Gilbert) nor the Board has been given authority by the Town to determine whether the Texas Water Code "trumps" the Bartonville ordinance and thus whether BWSC is subject to the ordinance. The Building Official and the Board have only been given authority to ensure the ordinances are followed. We thus find BWSC's argument is flawed – the Board abused its discretion by not determining that the ordinance should not apply to BWSC (when the Board has no authority to make such a determination). Indeed, if the Board had determined that BWSC was not subject to the ordinance, its determination would have been "null and void" as it would have been exceeding its authority. *El Dorado*, 195 S.W.3d at 250. That is, the decision by the Board would have been illegal if it had done what BWSC wanted.

And, as it is not within the Board's jurisdiction to make such a determination, it was also not within the trial court's jurisdiction in this limited petition for writ of certiorari review. *See Sw. Paper Stock*, 980 S.W.2d at 805 (explaining that a "district court sits only as a court of review, and the only question that may be raised by a petition for writ of certiorari is the legality

of the board's order)." We, therefore, agree with the Board that the trial court exceeded its subject matter jurisdiction.[3]

## CONCLUSION

Because the trial court exceeded the scope of its limited review of the Board's decision, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.[4]

Karen Angelini, Justice

---

[3] We note that courts have explained there is a distinction "between whether a board of adjustment has the power to act and whether it has exercised that power illegally." *El Dorado*, 195 S.W.3d at 250; *W. Tex. Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ). In the former, a district court may make a determination notwithstanding a party not exhausting all administrative remedies. *El Dorado*, 195 S.W.3d at 250; *see also W. Tex. Water Refiners*, 915 S.W.2d at 626-27. "In the latter, the only means to challenge the board's action is through the statutory writ of certiorari proceeding." *El Dorado*, 195 S.W.3d at 250; *see also W. Tex. Water Refiners*, 915 S.W.2d at 626. Here, BWSC is arguing the former – that the Board does not have the power to order the BWSC to comply with its ordinance. Thus, the petition for writ of certiorari was not the proper procedural vehicle.

[4] Having so determined, we need not reach the Board's second issue on appeal.