**Affirm in part; Reverse in part; Render in part; and Remand; Opinion Filed April 7, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00104-CV

## CPM TRUST, KLM SECURE TRUST, AND RMP PARKER CENTRAL, LLC, Appellants
## V.
## CITY OF PLANO, TEXAS AND THE BOARD OF ADJUSTMENT OF THE CITY OF PLANO, TEXAS, Appellees

### On Appeal from the 429th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 429-03394-2011

## OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

This case involves the Plano, Texas municipal sign ordinance. Appellants CPM Trust, KLM Secure Trust, and RMP Parker Central, LLC[1] (collectively, appellants or plaintiffs) filed this lawsuit against appellees the City of Plano, Texas (the "City") and the Board of Adjustment of the City of Plano, Texas (the "Board"). The claims asserted by appellants were (1) a challenge to the Board's decision requiring removal of a certain billboard (the "billboard") owned by appellants; (2) violation of appellants' "vested property rights"; and (3) a regulatory taking claim.

---

[1] The record shows the original plaintiffs in this lawsuit were CPM Trust, KLM Secure Trust, and Ralph and Muriel Pinkus LLC. Prior to the judgment complained of, the trial court signed an agreed order substituting RMP Parker Central, LLC for Ralph and Muriel Pinkus LLC.

Appellants filed a motion for summary judgment regarding their claim challenging the Board's decision requiring removal of the billboard. Following a hearing, the trial court denied appellants' motion for summary judgment as to that claim and signed an order in which it "affirmed" the Board's decision. Then, (1) appellants filed a motion for summary judgment respecting their remaining claims and (2) the City filed a combined motion for summary judgment/plea to the jurisdiction as to those claims. In a final judgment, the trial court (1) denied appellants' motion for summary judgment as to their remaining claims, (2) granted the City's motion for summary judgment/plea to the jurisdiction, (3) ordered that appellants take nothing against the City, and (4) awarded the City its "costs of court" against appellants.

In four issues on appeal, appellants contend the trial court erred because: (1) appellants are entitled to repair the billboard pursuant to the ordinance in question; (2) Chapter 245 of the Texas Local Government Code prohibits the City from violating appellants' "vested property rights" by "applying subsequently enacted ordinances to prevent repair of the [b]illboard," *see* TEX. LOC. GOV'T CODE ANN. §§ 245.001–.007 (West 2005); and (3) appellants pleaded valid claims respecting violation of Chapter 245 and a regulatory taking and the summary judgment evidence raised disputed fact issues as to those claims. Further, appellants assert the trial court erred to the extent it ruled that if appellants are ultimately allowed to repair the billboard under the ordinance in question or Chapter 245, they are not entitled to damages to compensate them for a "temporary" regulatory taking.

We decide in favor of appellants on their second issue. Appellants' first and fourth issues are decided against them. We need not reach appellants' third issue. We reverse, in part, the trial court's judgment; render judgment, in part; and remand this case to the trial court for further proceedings respecting the "costs of court" awarded to the City. The trial court's judgment is otherwise affirmed.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the following facts: (1) the billboard was installed in approximately November 1961 on property located along U.S. Highway 75; (2) in approximately 1968, Carl McCord and Ralph Pinkus purchased the property on which the billboard was installed (the "Property"); (3) at the time of that purchase, the Property was not within a municipal jurisdiction; (4) the Property was annexed by the City of Plano in 1984; (5) the ownership interests of McCord and Pinkus in the Property were subsequently transferred to appellants; and (6) the municipal ordinance in question was passed by the City in 2006 and is part of the City of Plano Comprehensive Zoning Ordinance.

Appellants filed their "original petition and application for writ of certiorari" in this case on August 17, 2011. In their live pleading at the time of the judgment complained of, appellants asserted in part the billboard "is supported by five separate poles that are partially buried." Additionally, appellants stated (1) in April 2011, a storm "damaged the [b]illboard"; (2) "one . . . of the five supporting poles remained after the storm"; (3) on April 27, 2011, "[the] City ordered Plaintiffs to remove the remainder of the [b]illboard and refused to allow its repair"; and (4) appellants filed an "application" to the Board to "appeal the decision of the administrative official requiring removal of the [b]illboard," but the decision of that official (the "building official") was upheld by the Board on August 9, 2011. Further, appellants contended in part,

> The evidence introduced in the record was that the Property had a legally, nonconforming billboard on it that was damaged by a storm. A support pole for the Billboard remains on the Property. The legal status of the [b]illboard and nature of damage to it were not disputed by the City. Section 3.1604(6) of the Plano Zoning Ordinance does not allow a nonconforming sign to be "moved, altered, removed and reinstalled, or replaced." The Board erroneously voted 2-3 to uphold the building official's decision that this language does not allow a property owner to "repair" the damaged [b]illboard.

Appellants asserted the following causes of action: (1) a request that the trial court issue a writ of certiorari directed to the City and the Board pursuant to Chapter 211 of the Texas Local

–3–

Government Code and reverse the decision of the Board, *see* TEX. LOC. GOV'T CODE ANN. §§ 211.010–.011 (West 2008); (2) a request for a declaratory judgment that the City violated appellants' "vested property rights" under Chapter 245 and appellants are entitled to repair the billboard and recover attorney's fees pursuant to that chapter; and (3) a "temporary and/or permanent" regulatory taking by the City in violation of Article 1, section 17 of the Texas Constitution, *see* TEX. CONST. art. I, § 17. In an August 19, 2011 "Unopposed Order Granting Writ of Certiorari," the trial court ordered that "a Writ of Certiorari issue to [the Board], directing it to return to [the trial court] certified or sworn copies of all proceedings and evidence taken at a hearing before [the Board] on August 9, 2011" respecting appellants' application to the Board described above.

Approximately one month later, appellees filed a joint general denial answer and response in which they asserted, in part,

> Concerning [plaintiffs' appeal of the building official's decision], the Board recognized that the intent of the ordinance regulating non-conforming signs is to allow a non-conforming sign to exist until it is destroyed. Once destroyed, a non-conforming sign cannot be rebuilt because it is specifically prohibited by Code. A sign that is in non-conforming status is not intended to last in perpetuity.
> Moreover, the Board did not agree that a sign that has been completely destroyed is considered "dilapidated" or "damaged" for purposes of making repairs. Since the billboard was completely destroyed with only one support pole standing, the property owners did not have the option to make repairs as provided under Section 3.1604(7)(b), Zoning Ordinance.

(citations to exhibits omitted). Exhibits attached to appellees' answer/response included (1) copies of several City of Plano ordinances, including sections 3.1602[2] and 3.1604[3] of the "Sign

---

[2] Section 3.1602 of the City of Plano Comprehensive Zoning Ordinance, titled "Definitions," provides in relevant part that a sign is in "dilapidated or deteriorated condition" when (1) "elements of the surface or background have portions of the finished material missing, broken, or otherwise existing such that they are illegible"; (2) "the structural support or frame members are visibly bent, broken, dented, or torn"; (3) "the panel is visibly cracked or, in the case of wood and similar products, splintered in such a way as to constitute an unsightly or harmful condition"; (4) "the sign or its elements are twisted, leaning, or at angles other than those at which it was originally erected (such as may result from being blown or the failure of a structural support)"; (5) "the message or wording can no longer be clearly read"; or (6) "the sign or its elements are not in compliance with the requirements of the current Electrical Code and/or the Building Code of the City of Plano." CITY OF PLANO, TEX., COMPREHENSIVE ZONING ORDINANCE, art. 3, § 3.1602 (2006).

[3] Section 3.1604 of the City of Plano Comprehensive Zoning Ordinance states in relevant part as follows:

Regulations" contained in the City of Plano Comprehensive Zoning Ordinance, and (2) a verified copy of the Board's "record" pertaining to appellants' application described above. Among the documents in the Board's record were (1) an August 9, 2011 "Decision of the Board of Adjustment" in which the Board "denied" appellants' appeal of "the Building Official's decision that the nonconforming billboard sign must be removed pursuant to Subsection 3.1604(6) of the Zoning Ordinance" and (2) photographs of the billboard taken after the 2011 storm that show one support pole standing and other parts of the billboard on the ground nearby.

---

3.1604 General

. . . .

6. Nonconforming Signs

a. Legal Nonconforming Uses

Subject to the provisions of this section, signs for a legal nonconforming use, as defined in the Comprehensive Zoning Ordinance of the City of Plano, are allowed. Any such sign legally existing on the effective date of this ordinance but which does not comply with the regulations of this ordinance, shall be deemed to be a nonconforming sign under the provisions of this ordinance and shall be subject to alteration or removal in accordance with the provisions of this ordinance.

b. Moving, Relocating, or Altering of Signs

No nonconforming sign shall be moved, altered, removed and reinstalled, or replaced unless it is brought into compliance with the requirements of this ordinance.

. . . .

7. Maintenance of Signs

a. Maintenance

Each sign shall be maintained in a safe, presentable, and good condition, including the replacement of defective parts and other acts required for the maintenance of such sign, without altering the basic copy, design, or structure of the sign. The Building Official shall require compliance or removal of any sign determined by the Building Official to be in violation of this section in accordance with the enforcement provisions set forth below.

b. Dilapidated or Deteriorated Signs

No person shall maintain or permit to be maintained on any premises owned or controlled by him or her any sign which is in a dilapidated or deteriorated condition as defined herein. Upon notice of violation, any such sign shall be promptly removed or repaired by the owner of the sign or the owner of the premises upon which the sign is located in accordance with the enforcement provisions set forth in 8. below.

8. Enforcement

a. Authority

The Building Official, or his respective designee(s), any peace officer, and any code enforcement officer is hereby authorized to issue a citation and to order the repair or removal of any dilapidated, deteriorated, abandoned, illegal, or prohibited signs from property within the corporate city limits of Plano, in accordance with the enforcement mechanisms set forth in this section.

CITY OF PLANO, TEX., COMPREHENSIVE ZONING ORDINANCE, art. 3, § 3.1604.

On February 2, 2012, appellants filed a motion for summary judgment as to their claim respecting judicial review of the Board's decision. Appellants asserted in part (1) "[t]he parties are in agreement and it is undisputed that the sign was damaged and not destroyed" by the 2011 storm; (2) the Board's decision that section 3.1604(6) requires appellants to remove their "damaged" sign constitutes an abuse of discretion because that decision ignores the plain language of the zoning ordinance and renders section 3.1604(7) meaningless; and (3) appellants are entitled to recover "temporary damages" in the amount of $45,000 as "compensation for the City's delay in allowing the billboard to be repaired."

Appellants' summary judgment evidence consisted of (1) the pleadings in this case and (2) the "Record from Board of Adjustment." Specifically, the portions of the Board's record cited by appellants in their motion included (1) an April 27, 2011 letter to McCord from the building official that notified McCord as to a "violation" respecting the billboard and stated in part "[t]he violation concerns a damaged nonconforming sign" and "[i]n order to correct this violation, the damaged nonconforming sign must be removed, and shall not be reinstalled or replaced" and (2) a document titled "Appeal Summary" that contained "staff findings" stating in part "[t]he billboard sign was damaged due to storms within the month of April, 2011" and "[t]he applicant is requesting to overturn the Building Official's decision and allow the nonconforming billboard sign to be repaired pursuant to subsection 3.1604 of the Zoning Ordinance, which does not specifically prohibit 'repair' under 6(b) and allows for repair under 7(b)."

Appellees filed a joint response to appellants' February 2, 2012 summary judgment motion in which they restated the arguments from their answer/response described above. Additionally, appellees filed a "plea to the jurisdiction and motion to dismiss" respecting appellants' "claim for inverse condemnation and regulatory takings." Specifically, appellees

asserted in part that governmental immunity applies because appellants failed to plead a valid claim as to those matters.

Following a hearing, the trial court (1) denied appellants' motion for summary judgment as to the Board's decision and (2) signed a May 17, 2012 order in which it "affirmed" the Board's decision. Further, upon agreement by the parties, appellants' regulatory taking claim against the Board was dismissed with prejudice.[4]

On November 21, 2012, appellants filed a motion for summary judgment respecting their Chapter 245 and regulatory taking claims against the City. Appellants asserted in part that the City violated Chapter 245 because the 2006 ordinance in question constituted a "new" ordinance that adversely impacted appellants' "ongoing [b]illboard project" and thus interfered with their "vested property rights." Further, as to their regulatory taking claim, appellants contended in part they have (1) been denied all economically viable use of their property as a result of the City's action or, alternatively, been deprived of their "investment-backed expectations" to "continued use of the [b]illboard" and (2) suffered damage in excess of $1,200,000. The summary judgment evidence attached to appellants' November 21, 2012 motion consisted of the Board's record described above, the pleadings and orders in this case, and several affidavits pertaining to the alleged regulatory taking damages and appellants' attorney's fees.

The City filed (1) a February 15, 2013 "first amended answer" in which it asserted immunity from suit as to appellants' Chapter 245 and regulatory taking claims in the alternative to its general denial and (2) an April 5, 2013 motion for summary judgment or alternatively, plea to the jurisdiction. In its motion for summary judgment/plea to the jurisdiction, the City contended in part (1) it was entitled to traditional and no-evidence summary judgment in its favor because Chapter 245 is inapplicable to this case and no regulatory taking occurred and (2)

---

[4] Appellants' regulatory taking claim against the City was temporarily abated by the trial court.

its governmental immunity from suit had not been waived because the "undisputed jurisdictional facts" established that appellants' claims respecting violation of Chapter 245 and a regulatory taking were not "valid." Additionally, the City requested that it be allowed to "recover its costs" from appellants.

Appellants filed a combined response to the City's motion for summary judgment and plea to the jurisdiction on May 8, 2013. Appellants argued in part (1) even if there is no permanent taking, "it is still possible that [appellants] would be entitled to temporary damages for the taking of their property rights between the time the City refused the [b]illboard to be rebuilt to the time that it is rebuilt" and (2) "[b]ecause [appellants] have raised a fact question on the jurisdictional issue, the trial court must deny the plea to the jurisdiction as a matter of law." Specifically, appellants asserted fact questions had been raised as to the appropriate parcel of property to be considered in determining whether a taking occurred, the magnitude of the economic impact from the alleged taking, and the amount of compensation to which they were entitled.[5]

The trial court's final order described above was dated December 16, 2013. Appellants filed a timely motion for new trial that was denied by operation of law. This appeal timely followed.

## II. APPELLANTS' ISSUES

### A. Standard of Review

We review a trial court's summary judgment de novo. *See, e.g.*, *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant

---

[5] Additional evidence not relevant to this appeal was attached to the City's motion for summary judgment/plea to the jurisdiction and appellants' response described above.

has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. In our review, we credit evidence favorable to the non-movant if reasonable jurors could and disregard evidence contrary to the non-movant unless reasonable jurors could not. *See, e.g., Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Although a denial of summary judgment is generally not reviewable, we may review such a denial when both parties moved for summary judgment and the trial court granted one motion and denied the other. *See, e.g., Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). In our review of such cross-motions, we review the summary judgment evidence presented by both sides and determine all questions presented. *See id.*; *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). If we conclude the trial court committed reversible error, we render the judgment the trial court should have rendered. *See Tex. Mun. Power Agency,* 253 S.W.3d at 192; *Dallas Morning News*, 22 S.W.3d at 356.

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *See, e.g., Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The burden is on the plaintiff to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *City of El Paso v. Mazie's, L.P.*, 408 S.W.3d 13, 18 (Tex. App.—El Paso 2012, pet. denied). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law which is subject to de novo review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Mazie's*, 408 S.W.3d at 18.

When a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the

pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *See, e.g., Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its pleading. *Id.*; *Miranda*, 133 S.W.3d at 226–27.

## B. Applicable Law

The Texas Local Government Code provides that the governing body of a municipality may appoint a "board of adjustment" to, among other functions, hear and decide appeals when error is alleged in any order, requirement, decision, or determination made by an administrative official in enforcement of a zoning ordinance. TEX. LOC. GOV'T CODE ANN. §§ 211.008–.009. A decision of a board of adjustment may be challenged by filing a petition in a district or county court stating that the board's decision is illegal in whole or in part and specifying the grounds of the illegality. *Id.* § 211.011(a). The trial court may reverse or affirm, in whole or in part, or modify the decision that is appealed. *Id.* § 211.011(f).

In an action challenging a decision by a board of adjustment, the trial court sits as a court of review and the only question before it is the legality of the board's decision. *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006); *Town of Bartonville Planning and Zoning Bd. of Adjustments v. Bartonville Water Supply Corp.*, 410 S.W.3d 23, 29 (Tex. App.—San Antonio 2013, pet. denied). The board's decision is presumed to be lawful, and the party attacking it bears the burden of establishing that the board clearly abused its discretion. *See City of San Antonio Bd. Of Adjustment v. Reilly*, 429 S.W.3d 707, 711 (Tex. App.—San Antonio 2014, no pet.); *Tellez v. City of Socorro*, 296 S.W.3d 645, 649 (Tex. App.—El Paso 2009, pet. denied). To establish that the board's decision is illegal, the party attacking it must present a "very clear showing of abuse of discretion." *Vanesko*, 189 S.W.3d at 771. A board abuses its discretion

–10–

when it acts without reference to any guiding rules or principles, or when it clearly fails to analyze or apply the law correctly. *Id*.

In determining whether a board abused its discretion, the trial court may consider the board's verified return and any other evidence presented to the trial court. TEX. LOC. GOV'T CODE ANN. § 211.011(d), (e). As to a board's factual findings, the trial court may not substitute its judgment for the judgment of the board. *Vanesko*, 189 S.W.3d at 771; *Bd. of Adjustment for the City of San Antonio v. Kennedy*, 410 S.W.3d 31, 35 (Tex. App.—San Antonio 2013, pet. denied). To prevail in the trial court, a party challenging a board's factual findings must establish that the board could have reasonably made only one decision and not the decision it made. *See Vanesko*, 189 S.W.3d at 771; *see also Kennedy*, 410 S.W.3d at 35 (it is not abuse of discretion for board to base its decision on conflicting evidence). The abuse-of-discretion review is necessarily less deferential when considering any legal conclusions made by the zoning board and is similar in nature to a de novo review. *Vanesko*, 189 S.W.3d at 771.

We apply the same rules to construe municipal ordinances as those used to construe statutes. *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002); *Baird v. City of Melissa*, 170 S.W.3d 921, 924–25 (Tex. App.—Dallas 2005, pet. denied). Our objective in construing municipal zoning ordinance provisions is to discern the city's intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999). We rely on the plain meaning of the text as expressing this intent unless a different meaning is supplied by definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *see also Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994) ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute."). "We do

not confine our review to words, phrases or clauses in isolation, but rather we examine the entire act to glean its meaning." *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001); *see also* TEX. GOV'T CODE ANN. § 311.021 (West 2013). In giving effect to the enactment as a whole, we should not assign a meaning to a provision that would be inconsistent with other provisions of the zoning ordinance. *See Meritor Auto., Inc.*, 44 S.W.3d at 90. Further, because statutory construction is a question of law, we review the issue de novo. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Baird*, 170 S.W.3d at 925.

Article I, section 17, of the Texas Constitution provides in part "no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17. Takings can be classified as either physical or regulatory. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). While all property is held subject to the valid exercise of the police power, a regulatory action may, under some circumstances, constitute a taking requiring compensation. *See Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 56 (Tex. 2006). Where a property owner believes compensation is due, he may seek redress via an inverse condemnation claim. *City of Houston v. Carlson*, 451 S.W.3d 828, 831 (Tex. 2014).

A municipal government enjoys immunity from suit unless its immunity has been waived. *Id*. at 830. Without this waiver, courts have no jurisdiction to adjudicate any claim against the municipality. *Id*. It is well settled that the Texas Constitution waives government immunity with respect to inverse condemnation claims. *Id*. "Nevertheless, such a claim is predicated upon a viable allegation of taking." *Id*. "In the absence of a properly pled takings claim, the state retains immunity." *Id*. Under such circumstances, a court must sustain a properly raised plea to the jurisdiction. *Id*.

## C. Application of Law to Facts

### 1. Trial Court's Judicial Review of Board's Decision

We begin with appellants' second issue, in which they contend the trial court erred by affirming the Board's decision to "prohibit repair of the [b]illboard." Specifically, appellants argue in part (1) the billboard "falls within the City's definition of 'dilapidated or deteriorated'" in section 3.1602 and thus can be "repaired" pursuant to subsection 3.1604(7) and (2) the Board's construction of the ordinance in question "ignores" the plain language of the ordinance and renders subsection 3.1604(7)(b) "meaningless."

The Board responds in part (1) it "made a factual finding that the [b]illboard had been destroyed which may not be second-guessed by this Court"; (2) because the billboard was "destroyed under the terms of the ordinance as opposed to being 'dilapidated and deteriorated,'" appellants "were not permitted to 'repair' their [b]illboard under the terms of the ordinance but were, to the contrary, prohibited from reconstructing same"; and (3) "the Board's construction of the City's ordinance does not contradict the plain language of the ordinance." According to the Board's brief on appeal, although section 3.1604(7) "permits maintenance and repair of signs" and "applies globally to all signs within the City," the billboard's condition "does not fall within the dilapidated or deteriorated classification governed by § 3.1604(7)" and, therefore, "the Board's reliance on § 3.1604(6) was appropriate." Specifically, the Board contends in part,

> [T]he consistent theme in § 3.1602's definition of "dilapidated or deteriorated" is the continued presence of a standing sign. In this regard, the definitions cited by Appellants focus only on the sign being "twisted" or "leaning," or where "portions" of the "surface or background" material are missing or broken, not where, as in this case, the supports and the sign itself have been completely blown down. Such a reading is consistent with the other portions of § 3.1602's definition, each of which indicate that the "dilapidated or deteriorated" descriptor was intended to apply to standing structures which were not being properly maintained.

–13–

[citations to record omitted]. In support of that argument, the Board cites the language of section 3.1602 and the photographs of the billboard in the Board's record described above. Further, the Board contends its reliance on subsection § 3.1604(6) "did not violate the plain language of the ordinance" because "the City has enacted additional, specific provisions to address how nonconforming signs are governed via its enactment of § 3.1604(6)."

In addition to the language of section 3.1602 quoted by the Board in its argument described above, that section also states in part that a sign is "dilapidated and deteriorated" when "the structural support or frame members are visibly bent, broken, dented, or torn" or "the sign or its elements are twisted, leaning, or at angles other than those at which it was originally erected (such as may result from being blown or the failure of a structural support)." *See* CITY OF PLANO, TEX., COMPREHENSIVE ZONING ORDINANCE, art. 3, § 3.1602 (emphasis added). The definitions in section 3.1602 do not define or contain the term "destroyed," nor does section 3.1604 contain that term or specifically address "destroyed" signage. *See id*. §§ 3.1602, 3.1604. The photographs of the billboard cited by the Board show one support pole standing and other parts of the billboard on the ground nearby. On this record, we cannot agree with the Board that the billboard's condition "does not fall within the 'dilapidated or deteriorated' classification' governed by § 3.1604(7)." *Id*. § 3.1604(7).

Pursuant to subsection 3.1604(7)(b), a dilapidated or deteriorated sign shall be "removed or repaired by the owner" in accordance with other provisions of the act. *Id*. § 3.1604(7)(b); *see also id*. § 3.1604(7)(a) ("maintenance" of sign can include "replacement of defective parts" as long as basic design or structure is not altered). The record shows that in its response in the trial court, the Board described subsection 3.1604(7)(b) as providing property owners "the option to make repairs." We conclude that description is consistent with the plain language of the ordinance. *Id*. § 3.1604(7)(b). Further, on this record, we conclude (1) the Board abused its

–14–

discretion by not allowing appellants the option to make repairs as provided under subsection 3.1604(7)(b) and (2) the trial court erred by affirming the Board's decision.

We decide in favor of appellants on their second issue.[6]

## 2. "Temporary" Regulatory Taking

Next, we address together appellants' first and fourth issues. In those issues, appellants contend they pleaded a valid claim as to a "temporary and/or permanent" regulatory taking and "the evidence includes disputed fact issues" respecting that claim. Further, appellants assert that if they are allowed to repair the billboard, the portion of their fourth issue respecting a "permanent" taking need not be addressed by this Court, but they are still entitled to recover "temporary damages including rentals or lost profits for that period of time when the [b]illboard was unusable."

The City responds in part the trial court properly granted its plea to the jurisdiction as to a regulatory taking because the facts alleged by appellants are not "enough to constitute a taking" and the City was therefore protected by governmental immunity.

Subsequent to the filing of the parties' appellate briefs in this Court, the Texas Supreme Court delivered its opinion in *Carlson*. *See* 451 S.W.3d at 828. In that case, an investigation by the City of Houston revealed various alleged structural, electrical, and plumbing problems in a condominium complex. *Id*. at 829. Of primary concern was evidence that an underground parking facility might fail, posing serious risk to dozens of units located above the garage. *Id*. The city declared the condominiums uninhabitable and posted a notice throughout the complex stating (1) the condominium owners had ten days to apply for a certificate of occupancy and (2)

---

[6] In their third issue, appellants complain as to the trial court's granting of the City's motion for summary judgment/plea to the jurisdiction respecting appellants' Chapter 245 claim and the denial of appellants' motion for summary judgment as to that claim. During oral submission before this Court, appellants stated that their issue respecting violation of Chapter 245 "does not come into play" if this Court concludes the trial court erred by affirming the Board's decision in question. In light of our conclusion above that the trial court did so err, we need not address appellants' third issue. *See* TEX. R. APP. P. 47.1.

–15–

failure to comply with the notice "may subject you to a municipal court citation." *Id*. at 829–30. The owners did not apply for an occupancy certificate or make the requisite repairs. *Id*. at 830. After a month passed without compliance, the city did not issue a citation, but rather ordered all residents to vacate the complex within thirty-one days pursuant to a city ordinance that authorized officials to "order the use discontinued immediately" when a structure "creates a serious and immediate hazard." *Id*. After an administrative hearing, the city upheld the order to vacate. *Id*. The order to vacate was later reversed by a district court based on due process violations and the owners sold the complex for redevelopment. *Id*.

Subsequently, a group of owners (the "owners") filed an inverse condemnation action, alleging their property was taken when residents were forced to vacate. *Id*. They sought compensation for years of lost use and other unspecified damages. *Id*. The trial court sustained the city's plea to the jurisdiction, concluding the owners had not alleged a taking. *Id*. The Fourteenth Court of Appeals in Houston reversed and the city filed a petition for review. *Id*.

The supreme court reversed the court of appeals' decision. The supreme court observed that the owners (1) "do not contest any of [the city's] property-use restrictions" or the "standards imposed" by the city, but rather "object only to the penalty imposed and the manner in which the city enforced its standards" and (2) "complain, for example, that the city did not specify the alleged violations," that "the punishment was excessive," and that "the safety regulations were misapplied vis-à-vis their property." *Id*. at 831–32. Further, the supreme court stated the owners "appear to suggest that a civil-enforcement procedure alone can serve as the basis of a regulatory-takings claim," but "have identified no authority for such a proposition." *Id*. at 832. Then, the supreme court reasoned as follows:

> We do not doubt, and the city does not deny, that the order to vacate interfered with the use of the respondents' property. Yet nearly every civil-enforcement action results in a property loss of some kind. The very nature of the action dictates as much. Nevertheless, that property is not "taken for public use" within

–16–

the meaning of the Constitution. Accordingly, where a party objects only to the "infirmity of the process," no taking has been alleged.

*Id*. at 832–33 (citations omitted). Additionally, the supreme court stated "it is immaterial that the city may have been mistaken regarding the actual safety of the complex" because "[e]ven assuming the city made a mistake, the [owners'] allegations would 'amount to nothing more than a claim of negligence on the part of [the city], for which [it] is immune under the Texas Tort Claims Act.'" *Id*. at 833 (quoting *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538 (Tex. App.—Dallas 1992, writ denied)). The supreme court concluded that because the owners "simply have not alleged a taking," the city retained its immunity from suit and dismissal for want of jurisdiction was proper. *Id*.

In the case before us, appellants do not contest the sign regulations in the City's zoning ordinance, but rather complain about the City's misapplication of certain regulations as to their property. Based on *Carlson*, we conclude appellants have not alleged a taking and the trial court properly granted the City's plea to the jurisdiction respecting appellants' taking claim.[7] *See id*. at 831–33.

We decide appellants' first and fourth issues against them.

### 3. Costs of Court

As described above, (1) the City requested that it be allowed to "recover its costs" in the trial court and (2) the trial court awarded the City its "costs of court" in the final judgment. In

---

[7] The parties do not cite or address *Carlson* in this appeal. In a February 4, 2015 post-submission letter to this Court, appellants cite *City of Galveston v. Murphy*, No. 14-14-00222-CV, 2015 WL 167178 (Tex. App.—Houston [14th Dist.] Jan. 13, 2015, no pet. h.), as supplemental authority in support of their argument that they have properly pleaded a regulatory taking. In *Murphy*, the City of Galveston appealed a denial of its plea to the jurisdiction in a case brought by a property owner complaining as to two separate decisions by city officials. *See id*. at *1. Specifically, the property owner complained in part that the city improperly relied on certain zoning standards to revoke the property's non-conforming status, rather than applying the properly applicable zoning standard. *Id*. at *3 n.4, The city argued in part on appeal that the property owner "waived" its right to raise a takings claim as to the city's revocation of the property's "'grandfathered' non-conforming status" by failing to pursue an appeal with the city's Zoning Board of Adjustment in accordance with the city's zoning standards. *Id*. at *7. The Fourteenth Court of Appeals in Houston described the issue as one of "ripeness" and concluded in part the trial court did not err by denying the city's plea to the jurisdiction because the city did not meet its burden to establish that its revocation decision was not final and authoritative. *Id*. at *8. Additionally, the court of appeals stated in a footnote, "We can discern, and the City points to, no reason aside from 'waiver' why the [property owner] would not be able to allege takings theories based on two regulatory actions by the City." *Id*. at *7 n.12. *Carlson* was not cited or addressed in *Murphy*. Further, the case before us does not involve the issue of whether a decision revoking a "'grandfathered' non-conforming status" was final and authoritative. We do not find *Murphy* persuasive.

–17–

their prayer in their appellate brief, appellants request in part that "the trial court's finding that the City recover costs of court from Plaintiffs be reversed and remanded."

Generally, a successful party is entitled to recover its costs from its adversary. *See* TEX. R. CIV. P. 131; *Gumpert v. ABF Freight Sys., Inc.*, 312 S.W.3d 237, 239 (Tex. App.—Dallas 2010, no pet.). "We review the award of costs under an abuse of discretion standard." *Canine, Inc. v. Golla*, 380 S.W.3d 189, 197 (Tex. App.—Dallas 2012, pet. denied) (citing *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001)); *accord Gumpert*, 312 S.W.3d at 239. The general rule in Texas is that expenses incurred in prosecuting or defending a suit are not recoverable as costs unless recovery for those items is expressly provided for by statute, rule, or under principles of equity. *Gumpert*, 312 S.W.3d at 239. Whether a particular expense is recoverable under statute or rule as a court cost is a question of law, which we review de novo. *Id.*; *see Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 440 (Tex. App.—Dallas 2011, pet. denied).

The record in the case before us contains an "Itemized List of Costs" filed post-judgment by the City in the trial court. That list includes costs pertaining to subpoenas, a deposition, and mediation following the trial court's May 17, 2012 interlocutory order affirming the Board's decision. The record does not show whether any of those costs are taxable regarding the claim, addressed above as to appellants' second issue, where we concluded the trial court erred, nor does the record show what costs from that list, if any, were included in the trial court's judgment that awarded "costs of court" to the City. Therefore, we remand this case to the trial court for determination of what "costs," if any, are recoverable by the City in light of our conclusions above.

# III. CONCLUSION

We decide (1) in favor of appellants on their second issue and (2) against appellants on their first and fourth issues. We need not address appellants' third issue.

We (1) reverse the portions of the trial court's judgment "affirming" the Board's decision in question and awarding "costs of court" to the City; (2) render judgment reversing the Board's decision that the billboard in question must be removed and cannot be repaired; and (3) remand this case to the trial court for further proceedings respecting the "costs" claimed by the City. The trial court's judgment is otherwise affirmed.

/ Douglas S. Lang
DOUGLAS S. LANG
JUSTICE

140104F.P05

–19–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CPM TRUST, KLM SECURE TRUST,
AND RMP PARKER CENTRAL, LLC,
Appellants

No. 05-14-00104-CV          V.

CITY OF PLANO, TEXAS AND THE
BOARD OF ADJUSTMENT OF THE
CITY OF PLANO, TEXAS, Appellees

On Appeal from the 429th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 429-03394-2011.
Opinion delivered by Justice Lang, Justices
Stoddart and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the portions of the trial court's judgment (1) affirming the decision of the Board of Adjustment of the City of Plano, Texas, and (2) awarding costs of court to the City of Plano, Texas. We **RENDER** judgment reversing the Board of Adjustment of the City of Plano, Texas's decision that the billboard in question must be removed and cannot be repaired and **REMAND** this cause to the trial court for further proceedings respecting the costs of court awarded by the trial court to the City of Plano, Texas. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of April, 2015.