ACCEPTED
04-15-00021-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/8/2015 10:43:31 PM
KEITH HOTTLE
CLERK

# NO. 04-15-00021-CV

**IN THE TEXAS COURT OF APPEALS
FOURTH COURT OF APPEALS
AT SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

07/8/2015 10:43:31 PM

KEITH E. HOTTLE
Clerk

## BOARD OF ADJUSTMENT FOR THE CITY OF SAN ANTONIO

**APPELLANT**

### VS.

## MICHAEL AND THERESA HAYES

**APPELLEES**

*Appealed from the County Court At Law No. 10, Bexar County,
Texas. Hon. David J. Rodriguez, Presiding*

## BRIEF OF APPELLANT
## BOARD OF ADJUSTMENT FOR THE CITY OF SAN ANTONIO

ALBERT LÓPEZ
State Bar No. 12562350
LAW OFFICES OF ALBERT LÓPEZ
14310 Northbrook Drive, Suite 200
San Antonio, Texas 78232
(210) 404-1983 (Telephone)
(210) 404-1990 (Telecopier)
ATTORNEYS FOR APPELLANT
BOARD OF ADJUSTMENT FOR THE CITY
OF SAN ANTONIO

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

Appellant: BOARD OF ADJUSTMENT OF THE CITY OF SAN ANTONIO, TEXAS

Counsel for Appellant:

ALBERT LÓPEZ
State Bar No. 12562350
14310 Northbrook Drive, Suite 200
San Antonio, Texas 78232
Telephone: (210)404-1983
Telecopier (210) 404-1990
Email: alopezoffice@gmail.com


Appellees: MICHAEL AND THERESA HAYES

Counsel for Appellees:

David L. Earl
745 East Mulberry, Mailbox 16
San Antonio, Texas 78212
Telephone No. (210) 222-1500
Telecopier No. (210) 222-9100

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.. . . . . . . . . . . . . . . . . . . . . . . . . . -i-

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iv-

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . -viii-

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ix-

STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-
    A.    Procedural and Factual Background. . . . . . . . . . . . . . . . . . . . -1-
    1.    Permits.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    2.    Definitions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
        a.    Railing or Guardrail.. . . . . . . . . . . . . . . . . . . . . . . . -4-
        b.    Fences. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
        c.    Fencing Alternatives.. . . . . . . . . . . . . . . . . . . . . . . -5-
        d.    Screen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
    3.    Case no. A-13-078 — The Railing and Netting System. . . . . . -6-
        a.    The Netting system. . . . . . . . . . . . . . . . . . . . . . . . -6-
        b.    The Railing System. . . . . . . . . . . . . . . . . . . . . . . . -8-
    4.    The Director's Decision – a Combination Railing and Netting
        System. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . -24-

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-
    A.    Standard of Judicial Review.. . . . . . . . . . . . . . . . . . . . . . . -26-

B. Issue No. 1.

  The Trial Court Erred in Denying the Board of Adjustment's Plea to the Jurisdiction.......... -29-

C. Issue No. 2.

  The County Court Erred in Reversing the Board's Decision by Finding That the Board of Adjustment Exceeded its Jurisdiction When it Rejected Appellee's Exhaustion Argument and Instead Exercised its Statutory Authority to Review the Zoning Decision in Question............................... -33-

  1. Request for Variance............................ -34-

  2. The BOA Had No Jurisdiction to Decide the Failure to Exhaust Administrative Remedies Question and Neither Did the County Court............................. -35-

D. Issue No. 3

  In the Event this Court Affirms the County Court's Decision, a Remand to the Board of Adjustment for Consideration of the Variance Application Is Proper and Consistent with the Exhaustion of Administrative Remedies Rule................................. -42-

PRAYER............................................. -43-

CERTIFICATE OF SERVICE. ................................. -44-

# INDEX OF AUTHORITIES

## CASES

*Abbott v. City of Paris*, 429 S.W.3d 99, 101-102
(Tex. App. Texarkana 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-

*Boswell v. Bd. of Adjustment & Appeals*, (Tex. App. Corpus Christi July
16, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

*Christopher Columbus St. Mkt. LLC v. Zoning Bd. of Adjustments of
Galveston*, 302 S.W.3d 408, 415 (Tex. App. Houston 14th Dist. 2009)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-, -33-

*City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex. App.—San Antonio
2005, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-, -28-

*City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250, (Tex.
App. San Antonio 2006). . . . . . . . . . . . . . . . . . . . . . . . . . -38-, -40-, -43-

*Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006).. . . . . . . . -27-, -28-, -35-

*Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 (Tex. 1993) (per
curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

*Essenburg v. Dallas County*, 988 S.W.2d 188, 41 Tex. Sup. J. 1399 (Tex. 1998)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-

*In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . -28-

*Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex. 1985). . . . . . . . . . . . . . . . -39-

*Lufkin v. McVicker*, 510 S.W.2d 141, 144 (Tex. Civ. App. Beaumont 1973)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-

*Sanchez v. Bd. of Adjustment*, 387 S.W.3d 745, 748 (Tex. App. El Paso
2012, *writ denied*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-, -30-

*Tellez v. City of Socorro*, 226 S.W.3d 413, 414 (Tex. 2007)
(per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

*Tex. Dep't of Parks & Wildlife v. Miranda*. . . . . . . . . . . . . . . . . . . . . . . . . -26-

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228, (Tex. 2004)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

*Town of Bartonville Planning and Zoning Bd. of Adjustments v. Bartonville
Water Supply Corp.*, 410 S.W.3d 23, 29 (Tex. App.—San Antonio 2013, pet.
denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-, -36--38-, -40-, -41-

*West Texas Water Refiners, Inc. v. S&B Beverage Co.*, 915 S.W.2d 623, 626-
27 (Tex. App.--El Paso 1996, no writ). . . . . . . . . . . . . . . . . . . . . . -37-, -40-

*Wilmer-Hutchins Indep. Sch. Dist.*, 51 S.W.3d 293, 294
(Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

*Winn v. City of Irving*, 770 S.W.2d 10, 11
(Tex. App.—Dallas 1989, no writ).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-

**STATUTES**

Tex. Loc. Gov't Code § 211.009(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -38-

Tex. Loc. Gov't Code § 211.009(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . -39-, -40-

Tex Loc. Gov't Code § 211.011(a). . . . . . . . . . . . . . . . . . . . . . . . . . . -29-, -33-

Tex. Loc. Gov't Code § 211.011(b).. . . . . . -ix-, -24-, -29-, -30-, -32-, -35-, -36-

Tex Loc. Gov't Code § 211.011(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

Tex. Loc. Gov't Code § 211.011(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -35-

Tex. Loc. Gov't Code § 211.010(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -38-

Tex. Loc. Gov't Code § 211.011. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

Tex. Loc. Gov't Code § 211.008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Tex. Local Gov't Code § 211.009(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . -34-

Texas Loc. Gov't Code § 211.011(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

**ORDINANCES**

San Antonio Unified Development Code § 35-514 (a)(1). . . . . . . . . . . . . . -4-

San Antonio Code of Ordinances § 10-5(b). . . . . . . . . . . . . . . . . . . . . . -3-

San Antonio Development Code § 35-406. . . . . . . . . . . . . . . . . -38-, -41-

San Antonio Development Code § 35-481 . . . . . . . . . . . . . . . . . . . . . . -38-

San Antonio Development Code § 35-482(3). . . . . . . . . . . . . . . . . . . . . -34-

San Antonio Unified Development Code § 35.514 . . . . . . . . . . . . . . . . . -11-

San Antonio Unified Development Code § 35-370(a)(5). . . . . . . . . . . . . . -5-

San Antonio Unified Development Code § 35-A101. . . . . . . . . . . . . . . . . -5-

San Antonio Unified Development Code § 35-514(a)(6). . . . . . . . . . . . . . -5-

San Antonio Unified Development Code § 35-514(b)(1) . . . . . . . . -5--7-, -11-

San Antonio, Code of Ordinances § Sec. 10-1. . . . . . . . . . . . . . . . . . . . -38-

Tex. Loc. Gov't Code § 211.009(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . -39-

Tex. Loc. Gov't Code § 211.009(b)(1). . . . . . . . . . . . . . . . . . . . . -39-, -41-

# STATEMENT OF THE CASE

*Nature of the case.*  This is an appeal from a county court judgment that overturned an administrative decision of the Board of Adjustment for the City of San Antonio.

*Course of proceedings.*  The Appellees filed a Writ of Certiorari challenging the Board of Adjustment for the City of San Antonio's decision. Appellant challenged the county court's jurisdiction on the basis that the writ of certiorari was untimely.  The trial court held a hearing and issued a judgment.

*Trial court disposition.*  The county court reversed the decision of the Board of Adjustment for the City of San Antonio on the basis that it acted without jurisdiction and denied Appellant's plea to the Jurisdiction, Appendix Tab A.

**STATEMENT REGARDING ORAL ARGUMENT**

This case involves a unique area of law related to judicial review of a decision by the Board of Adjustment of the City of San Antonio. The Board believes that oral argument would be helpful for this Court's determination of the legal issue.

## ISSUES PRESENTED

### ISSUE NO. 1

An appeal to the county court from a decision of the Board of Adjustment from the City of San Antonio must be taken in time pursuant to the 10-day jurisdictional limitation set forth in Tex. Loc. Gov't Code § 211.011(b). Because the Appellees' appeal was taken after the expiration of 10 days from the filing of the Board's decision in the Board's office, the trial court erred in denying the Board of Adjustment's plea to the jurisdiction.

### ISSUE NO. 2

When a Board of Adjustment's decision is appealed to a state court by way of a writ of certiorari, the question in that court is the legality of the Board's decision. Neither the Board of Adjustment nor the county court had jurisdiction to consider and decide the question raised by Appellees: the Board of Adjustment lacked appellate jurisdiction to review a zoning decision by an administrative officer on the basis that the appellant failed to pursue her administrative remedies with respect to a prior and related BOA decision. The county court erred in reversing the Board's decision by finding that the Board of Adjustment exceeded its jurisdiction when it rejected Appellee's exhaustion

argument and instead exercised its statutory authority to review the zoning decision in question.

**ISSUE NO. 3**

For consideration before the Board of Adjustment was an appeal of a decision to rescind a permit for the installation of a railing and, alternatively, an application for a variance regarding the same railing. The Board of Adjustment granted the permit and did not consider the variance application. In the event this Court affirms the county court's decision, a remand to the Board of Adjustment for consideration of the variance application is proper and consistent with the exhaustion of administrative remedies rule.

**BRIEF OF APPELLANT**

**BOARD OF ADJUSTMENT FOR THE CITY OF SAN ANTONIO**

TO THE HONORABLE FOURTH COURT OF APPEALS:

NOW COMES Appellant Board of Adjustment for the City of San Antonio and submits its brief.

## STATEMENT OF FACTS

### A. Procedural and Factual Background:

This case involves a controversy over the construction of a tennis court at the residence of Michele Pauli Torres ("Torres"), Appellees' neighbor. At the center of this appeal are two decisions of the San Antonio Board of Adjustment ("BOA"), involving the same parties, taken on two separate appeals from determinations of the City of San Antonio Development Services Department ("Department") regarding the installation of railing and netting systems around the tennis court. The BOA decided case no. A-13-078 on January 13, 2014. CR 191. The Board's decision was in favor of Appellees. In case no. A-14-047, decided on April 21, 2014, the decision was in favor of Torres.

In both cases, the BOA was asked to interpret the ordinance relating to the permitting of fences and to determine whether the proposed installation of the railing and netting systems were regulated by the City of San Antonio's Uniform Development Code ("UDC")[1] and whether permits were required for the installation of the proposed improvements.

On May 16, 2014, Appellees filed a writ of certiorari seeking the county court to review the legality of the BOA's decision in case no. A-14-047. Appellees argued that Torres, as the party adversely affected and aggrieved by that BOA's decision in the prior appeal, case no. A-13-078, was required to first seek judicial review of that decision before the BOA could hear the Torres appeal. Because Torres failed to do so, Appellees argued, the BOA lacked jurisdiction as an appellate body to decide and act on case no. A-14-047. The county court accepted Appellees' contentions, found that the BOA lacked jurisdiction to hear case no. A-14-047, and overturned the BOA's decision. The county court denied all other relief requested by the parties and this appeal followed.

---

[1] The full text of UDC can be found at: https://www.municode.com/library/tx/san_antonio. (Last visited July 1, 2015). The City of San Antonio Code which is referenced *infra* can also be found at that address.

## 1.    Permits.

The provisions relating permits is in Chapter 10 - BUILDING-RELATED CODES- of the City of San Antonio Code of Ordinances. City of San Antonio, Code of Ordinances, § 10.1, *et seq.* According to its purpose, Chapter 10 "shall be construed to secure its expressed intent, which is to provide minimum requirements to safeguard the public safety, health and general welfare, insofar as they are affected by building construction, through structural strength, adequate means of egress facilities, stability, ... and in general to promote safety to life ... from other hazards incident to the construction, design, erection, installation, alteration, addition ..." *Id.*, § 10.1.

Chapter 10 requires that any owner who intends to construct, enlarge, alter, or repair a building or structure shall first make an application to the building official and obtain the required permit. *Id.,* § 10-6. The Director of development services, Roderick Sanchez ("Director"), is the official in the City of San Antonio charged with the duty to receive applications, review construction documents and issue permits. *Id.*, §§Sec. 10-1, 10-5(b).

The procedure the UDC establishes for the review of the Director's decision to rescind or revoke a permit is an appeal to the Board Adjustment. UDC, § 35-406.

**2.** **Definitions**.

**a.** **Railing or Guardrail.**

A railing or guardrail is neither defined nor required by the UDC. Section 312.1 of the International Residential Code provides placement and specification criteria for what is referred to as a "guard."[2] A general repair permit application is required for a railing permit. As we shall see, in the face of an absence of a workable definition for a "railing" or "guardrail," both appeals before the BOA became marred by controversy when the parties attempted to determine whether the proposed railing, in its various forms, was capable of been defined as requiring a permit under the UDC.

**b.** **Fences**.

A permit is required to build a fence. *Id.*, § 35-514 (a)(1). A fence is defined in the UDC as a tangible enclosure or barrier, constructed of any material allowable by the UDC, but not including hedges, shrubs, trees, or other natural growth, erected for the purpose of providing a boundary, separation of areas, means of protection, to prevent uncontrolled access,

---

[2] The International Residential Code is located at: http://publiccodes.cyberregs.com/icod/irc/2012/icod_irc_2012_3_sec012.htm. Last visited July 1, 2015. Appendix, Tab D.

decorative purposes, or concealment. Retaining walls are not considered fences. UDC, § 35-A101.

The UDC states that no fence over six (6) feet high shall be built in the city unless all owners of property abutting the parcel where the fence is to be constructed have been contacted by the development services department, and have expressed no opposition to the proposed fence, or permission has been granted by ordinance adopted by the city council. Provided, that no fence in excess of twelve (12) feet in height shall be allowed under any conditions. This section does not apply to any fence specifically required or allowed to be higher by some other section of the code. *Id.*

The UDC further provides that all fences shall be constructed of wood, chain link, stone, rock, concrete block, masonry brick, brick, decorative wrought iron or other material(s) which are similar in durability. *Id.*, §35-514(a)(6).

### c. Fencing Alternatives.

Sport Court Fencing. The UDC does not provide a definition for sports court fencing. Only two sections of the UDC mention sport fence. Section 35-370(a)(5) allows a sport court in a residentially zoned property. *Id.*, §35-370(a)(5). Section 35-514(b)(l) provides a general description and

placement criteria for sport court fences: "Fencing, screening and or back stops for sport courts such as basketball, tennis, batters cages, etc. shall be constructed only in the side or rear yard and shall be located no closer than 20 feet to a side or rear property line of an adjacent single family use or residential zoning district and/or a public or private street. The maximum height for sport court fencing shall be limited to 12 feet in height in accordance with section 6-2 of the building code." *Id.* 35-514(b).

### d. Screen.

A "screen" is defined as vegetation, fence, wall, berm or a combination of any or all of these which partially or completely blocks the view of and provides spatial separation of a portion or all of a site from an adjacent property or right-of-way; open spaces, landscaped areas, fences, walls, or any combination thereof, used to physically separate or screen one use or property from another so as to visually shield or block noise, lights, or other nuisances." Id., § 35-A101.

### 3. Case no. A-13-078 — The Railing and Netting System.

#### a. The Netting system.

On April 18, 2013, Torres submitted a permit application to install a netting system in the tennis court that received the designation of "AP #1876879." CR 86.  The application described the netting system as follows:

> As indicated on the diagram, the Netting System is required along 70 feet of the northeastern portion of the tennis court and 77 feet, 9 inches along the northwestern portion of the tennis court to keep tennis balls from entering into abutting properties. The Netting System will not exceed 6 feet in height and would be hidden from view of abutting properties by existing bamboo trees along the rear property line (see attached photos). The Netting system would be attached to a railing on the tennis court only when the tennis court is in use and removed when not in use.

CR 294.c The parties' presentation during the BOA hearing in case no. A-13-078, also described what was before the BOA.  Appellees argued that:

> This proposed "netting system" is in fact screening and a fence as referred to in the UDC because it is a barrier that creates concealment and partially blocks the view of and provides spatial separation of a portion of an adjacent property and is used to physically separate or screen one use or property from another so as to visually shield or block from nuisances (balls, lights, etc.)

> Furthermore, the proposed system is permanent in nature as the net/screen will be attached to the illegally erected, noncompliant, and non-engineered sports court, fence, fence posts, and light posts that are cemented in the slab and clearly permanent in nature.

CR 226. Appellees also argued that as "a screening and fencing mechanism, the proposed "netting system" must comply with the UDC Sec. 35-514 (B)(1) for Sports Court fencing and therefore abide by the 20 ft. setback and 12 ft. height requirement as stated in the code." CR 227. Appellees then requested that the BOA "[M]odify the Permit to require the Rail and/or Net System to comply with the 20' Setback required by Section 35-514(B)(l)" of the UDC. CR 228.

On the other hand, Torres relying on several provisions of the UDC, argued that the temporary netting was not a "fence." CR 260-61. She also contended that the building setback requirements did not apply to a sports court. CR 265. The netting system was illustrated in several photos. *See* CR 225.

The application for the netting system was not decided until August 26, 2013, when the Director also decided Torres' application for the railing.

### b. The Railing System.

On August 26, 2013, Torres applied for a general repair permit with the Department with the understanding that a general repair permit is required for installation of a railing. CR 281, 284. The purpose of the application was to obtain from the Department a permit to install a railing on the existing

foundation of the tennis court. The Department's application and permit document was identified "AP #1908870" and it can be found at CR 277.

A photograph of the proposed railing accompanied the applications. CR 287; 221. The railing was described as approximately 40" in height along 70 linear feet of the northeastern portion of the tennis court and 77.75 linear feet along the northwestern portion of the tennis court for safety purposes. CR 281. The proposed railing was to have round metal posts, wire mesh, and a flat top surface comprised of Trex material. *Id*. *See* photo at CR Supp 67.

Because a railing is not defined in the UDC, Appellees referenced the definition of "fence" found in the UDC to argue that the proposed railing was a fence because it had a height over 6 feet above grade, erected to provide a boundary and separation of areas as well as means of protection for those using the court, CR 222; and seventy (70) percent or more is open to permit air and visibility. Appellees also contended that the railing was a "sport fence" that did not meet the UDC height requirement for a sport fence. CR 223.

Torres, based on her own interpretation of the UDC fence provisions concluded that the railing was not a "fence" and, therefore, was not prohibited.

### 4. The Director's Decision – a Combination Railing and Netting System.

With the railing application, Torres included an affidavit dated August 22, 2013, by Roderick J. Sanchez, the Director of the Development Services Department. CR 282. In his affidavit, Sanchez stated the Department's decision on both applications. *Id.* Sanchez explained that Torres intended to install a combination railing and netting system that consisted of a railing approximately 36-40 inches in height with fall protection along with a non-permanent netting system that can be raised during use and lowered when not in use. *Id.* Sanchez decided that according to the San Antonio Unified Development Code ("UDC"), this type of railing and netting barrier system was not a "fence" as defined in the UDC; therefore, the twenty-foot setback for a sports court fence did not apply. *Id.* Sanchez also concluded that the proposed railing and netting system did not require a variance from the City. *Id.* Finally, Sanchez decided that the proposed railing and netting system required only a general repair permit for installation of the railing, but the netting did not require a permit. *Id.*

On August 26, 2013, the Department issued a general repair permit for the proposed railing and the netting system. On September 6, 2013, Appellees

appealed the Department's decision to the BOA. CR 275. The Appellees alleged that the Building Official, Roderick Sanchez, erred in allowing the erection and/or construction of railing, screening, and/or fencing for a Sports Court at the Torres property. *Id.*

On January 13, 2014, a hearing was held before the BOA. CR 191. An excerpt of the transcript of the Board's hearing states the following:

> Therefore, the Board may consider the following:
> The proposed railing and non-permanent netting barrier system are not fencing as defined in Appendix A of the UDC; the proposed railing and non-permanent netting barrier system are not sport court fencing or subject to the 20-foot setback requirement identified in Section 35.514 of the UDC.

CR 101. At the conclusion of the hearing the following motion was made:

> "The motion I make is in favor of reversing the director's decision for 1) Railing is not a fence as defined in the Unified Development Code or a sport court fence subject to the minimum 26-foot setback requirement of Section 35-514(b)(1) of the Unified Development and, 2.) A non-permanent netting barrier system is not a fence as defined in the United Development Code or a sport court fence subject to the minimum twenty (20) foot setback requirement of Section 35-514(b)(1) of the Unified Development Code. The testimony that has been presented today is the evidence supporting the decisions that we are making today."

CR 192. The motion passed by a majority vote. *Id.*

On February 12, 2014, Torres made an application for a 40" metal railing. RR, Vol. 4, Ex. 1. at p. 1. The application was for a permit to install the

railing system previously requested except that the application did not include a netting system. *Id.* On February 13, 2014, the Department issued Permit Number 1951114 for the railing. *Id.*

On March 4, 2014, the Director rescinded the railing permit. CR Supp 76. The Department stated that the permit was issued in error due to the Board of Adjustment's January 13, 2014 determination that the structure would be a Sports Court Fence and subject to the 20' setback requirement. *Id.* The Director also stated that it could not issue the permit without a variance from the Board of Adjustment. *Id.* Later, during the appeal hearing on case no. A-14-047, the Director further explained the reasoning behind granting and subsequently rescinding the permit:

> "After the [January 13, 2014] board meeting there was some conflicting perceptions about what that motion was and what we heard. And so, as a result of that, the Applicants -- the property owners requested a permit to build the guardrail, so a permit was issued.
>
> And a few days later, after some of the staff had started to talk as -- about what they heard at the meeting, and there was some contradiction between us, we decided to go to the Board to clarify what the Board's decision was. And after receiving that clarification that -the decision was that the guard -- that the guardrail was a fence and a sport court fence. We then rescinded the permit for the guardrail and so the appeal that's in front of you today is that decision that we rescinded the guardrail permit.

CR 483.

On March 20, 2014, Torres requested a variance from the Board of Adjustment. The variance would have allowed Torres to construct a 40" high metal railing to the rear and right side of the property. CC 176. On the same date, Torres appealed to the BOA the Director's decision to rescind the railing permit. CR Supp. 87.

On April 21, 2014, the BOA held a hearing on Torres' appeal of the revocation of the permit and the request for a variance. The Director proposed the BOA decide first the appeal of the Director's decision to rescind building permit AP No. 1951114 for a guardrail and classifying it as a sport court fence. CR 479-80. If the BOA denied the appeal, the next issue for consideration would have been the request for a variance from the 20-foot setback to allow installation of a guardrail on the property line. *Id.*

A third alternative was raised by the Department. The BOA could modify the Director's decision, CR 484.

The Department's recommended against granting the appeal based on its interpretation of the April 21, 2014, motion. The Department staff reasoned that because the BOA had ruled to reverse the Director's decision that a guardrail was not a fence or a sport court fence, CR 152, the approval of the permit would contradict the Board's previous decision. CR 484. The

Department recommended granting a variance because the guardrail was a guard fall protection system that should be located on the edge of the slab, and the setback of 20 feet leaves the edge unprotected. CR 154.

After a discussion about whether the request for a railing permit had been previously decided during the January 13, 2014 hearing, Torres amended the application for a permit to remove the wire paneling attached to the railing. CR 506. In response to the amendment, the following exchange took place:

THE CHAIR: Mr. Camargo.

MR. CAMARGO: But just to be clear with staff --

THE CHAIR: Hold on. Mr. Camargo, please continue.

MR. CAMARGO: -- the staff and Mr. Killen. Because I keep hearing about the Board reversing their previous action calling it a rail and sport court fence, but that's not -- what we're looking at now is not what I recall back in January. It was a railing and the so-called fencing. So that was action on that which was presented. This is totally different. So we would not be reversing the previous action, because it's two different animals; two different structures.

MS. HERNANDEZ: What was before you in January was two parts: this railing and the netting -- and the temporary netting. And your motions were for both the guardrail and then there was a separate motion for the fencing.

MS. PAHL: No, they did it together.

-14-

MS. HERNANDEZ: Oh, it was a -- it was a combined motion, but it was specific to guardrail and the temporary netting. And this guardrail was presented to you back in January.

MR. CAMARGO: So if we were to approve this proposal, we would not be -- oh, what -- going against what we ruled on in January because it's

BOARD MEMBER: With the netting.

MR. CAMARGO: -- with the netting, because it's something less.

BOARD MEMBER: Right.

MS. HERNANDEZ: I believe, based on -- based on what -- especially since the Applicant has changed what it looks like, it is a different request than what you saw in January.

MR. CAMARGO: Well, maybe when we hear from the opposition they can add some more confusion.

CR 506-07. *See* also the comments at CR 523, reiterating the difference between what was considered in January 13, 2014, and the question before the Board.

The following discussion took place regarding the Director's revocation of the permit:

MS. PAHL: And that was why the director -MR.

CAMARGO: In reading that --

MS. PAHL: -- was confused and rescinded the permit, because the motion was a single motion --

MR. CAMARGO: To include, yeah.

MS. PAHL: -- to include the guardrail as a sport court fence and the temporary netting as a sport court fence.

MR. CAMARGO: Correct. And I think you said it correctly that perhaps there was confusion in denying the permit entirely. Because I just wonder what the Board would have done in January if they were only acting on the railing and not this additional fencing at the top. And I think that's like, I guess in my mind, the question that we have before us today: Did the director act appropriately in making the interpretation that we denied the railing also when, in fact, the motion was to deny railing and fencing that exceeded the same height.

CR 531.

At the conclusion of the presentation, Board member Camargo made the following motion:

MR. CAMARGO: I would move in Case A-14-049; the Applicant being Michele Pauli Torres, on property located at 151 Algerita Street on Lot 5, Block A, NCB 11649; be granted the appeal to rescind and modify the director's decision on Permit No. 195-1114 and allow a railing, such as the one that has been presented to the Board, to be erected in the

location that has also been presented to the Board along a facility that has been identified as a sport court, a tennis court.

BOARD MEMBER: I would just add that it's not a fence.

MR. CAMARGO: And that it's this member's opinion that that is not to be considered a sports fence, as was earlier discussed and described in previous hearings. End of motion.

CR 555-56. During discussion of the motion, the following was stated:

MR. CAMARGO: From a discussion standpoint, I think what has been pointed out by the majority of the members here is that safety is a big factor. We may or may not agree whether this tennis court should have been allowed at this elevation at this location, but it has been permitted and it is there in existence. Now it's our -- it falls on our shoulders to provide protection for the -- for general public. And for that reason I feel that the -- the railing, the fencing, whatever you want to call it -- this barrier --

BOARD MEMBER: Not a fence.

MR. CAMARGO: -- is -- is for the protection of the general public.

THE CHAIR: Thank you, Mr. Camargo. I would just like to add: I'm going to be in support, as well. The guardrail, in my opinion, is a safety issue. It provides safety. I think with the planting of the bamboo it kind of rectifies some of that -- some of that visual down into the pool area. I think it's a -- it's a – it's a -- you know, it's a good remedy. It's not the best. But, you know, that's what we're here for. So I am supporting Mr. Camargo's motion.

MR. CAMARGO: And I guess for purposes of clarification, so we don't have to come back again as we did the last time, I had understood that Mr. Killen had amended – I don't know if it was an amendment or just a statement of fact that the cattle wire or whatever on that fencing would be removed. My motion does not include that. Whatever acceptable material from the UDC standpoint should be allowed and we should not

be dictating whether cattle paneling or hog paneling or whatever. I just wanted to clarify that for the future.

CR 557-58. The appeal passed by unanimous vote. CR 559.

The minutes of the April 21, 2014 BOA meeting were prepared and subsequently approved during a Board meeting on May 5, 2014. Ex Vol 4, Def. Exhibit 2 at p. 10. On May 5, 2014, the Chairman of the Board, Andrew Ozuna, signed the minutes. CR 117.

On May 16, 2014, Appellees filed a writ of certiorari challenging the BOA's decision. CR 5.

On September 24, 2014, Appellees filed an amended petition for writ of certiorari. CR 29. On September 30, 2014, the BOA filed its objections to the Appellees' verification of the amended writ of certiorari on the grounds that Appellees' assertion that the minutes of the Board were filed on May 7, 2014, was made without the affiant's personal knowledge of the facts stated in the writ; and that statements were conclusory and devoid of any factual foundation showing personal knowledge. The BOA demanded strict proof of the facts asserted and on which the Appellants' claimed the county court had jurisdiction. CR 475-76.

On November 19, 2014, Appellees filed a response to the BOA's objection to the verified pleading. CR 561. Appellees claimed that on May 7, 2014, the Official Minutes were attested to by the Executive Secretary, filed in the office of the Board and made available to the public; and that a summary of the facts regarding the filing of the Official Minutes was contained in an Affidavit which was attached to the response as Exhibit D. *Id.*

"Exhibit D" consisted of several emails exchanged between Appellees attorney's staff and Margaret Pahl, Senior Planner, City of San Antonio Development Services Department (DSD). *Id.*, 567-571. The emails showed that on May 1, 2014, at 6:53 p.m., Michele Marshall, law clerk for Mr. David L. Earl, Attorney for Appellees, sent an email to Margaret Pahl with the following request: "Can you please provide at your earliest convenience the minutes from the Board of Adjustment Hearing held on April 21, 2014 *approving the Appellant's request for the above mentioned case.*" (*Emphasis supplied*). CR 567. The following day, at 9:02 a.m., Ms. Pahl replied to Ms. Marshall's request: "The minutes are on the agenda for Board consideration and adoption on

Monday, May 5th. The soonest they will be available is Tuesday morning. I'll let you know." At 3:12 p.m., Ms. Marshall sent a second email to Ms. Pahl: "Sorry I just wanted to clarify, *has there been a filing of the Board's decision with your office yet? Or will that not occur until the minutes of the meeting are approved*? (*Emphasis supplied*). CR 568. On May 7, 2014, Liz Holmes, Assistant to David L. Earl, sent an email to Ms. Pahl with the message: "Please advise." A portion of the back and forth conversation in the emails exchanged between Ms. Marshall and Ms. Pahl was included in Ms. Holmes' email. CR 568-69. On May 7, 2014, at 11:00 a.m., Ms. Pahl sent Ms. Holmes an email with attachment "SKM13T _36314050709570.pdf." At 11:02 a.m., Ms. Hayes sent an email to Mr. Earl, Ms. Marshall and Mr. Hayes with the following message: "Please see attached the BOA Official Minutes for the 4.21.14 Meeting. Thanks." CR 571. "SKM13T _36314050709570.pdf" was attached to the email. Admittedly, on May 7, 2014, Appellees had notice of the decision of the BOA. CR 563.

On November 20, 2014, Appellees filed a second amended petition for writ of certiorari. CR 586. Appellees challenged the BOA's decision

claiming that it was made without jurisdiction, was arbitrary, capricious and

illegal, and constituted an abuse of discretion for the following reasons:

The Board of Adjustment had no jurisdiction to hear the matter because Torres failed to exhaust her administrative remedies regarding the January 13, 2014, decision.

The Board of Adjustment made no findings of fact as required by San Antonio Unified Development Code Section 35-801(k) which pertains to the BOA's authority to make special exceptions.

Board of Adjustment was jurisdictionally precluded from granting a variance to the zoning setback or granting relief related to their previous decision of January 13, 2014 upholding the zoning code.

The Board of Adjustment abused its discretion in granting the appeal and variance based in the finality of the BOA's prior decision.

Regarding the 2012 permit for a retaining wall, Appellees appealed on the following grounds:

Violation of due process by the BOA regarding the approval of a 2012 permit for a retaining wall on Torres' property that was issued without a permit.

Violation of due process by the BOA when it failed to consider the appeal regarding the approval of a 2012 permit for a retaining wall Violation of due process by the BOA in allowing the building and "permitting" of the slab without first giving notice to the Petitioner, and allowing the construction of the improvement without following proper procedure and notice, in violation of the requirement of Chapter 35 of the City Code, Chapter 211 of the Texas Local Government Code and Article I, Section 19 of the Texas Constitution.

CR 590. On November 26, 2014, the county court held an evidentiary hearing on the BOA's objection to the jurisdiction based on the timeliness of the filing of the writ of certiorari. RR Vol. 3, p. 5. During the hearing, Mr. Earl argued:

> So clearly by this e-mail we were told that the earliest they'd be available is the day following the 5th which is the 6th, by the City's own admission. We filed our writ on the 16th within 10 days from that date. So clearly within the balance of the law, clearly the jurisdiction is upon this Court to hear this matter because the writ of certiorari was filed within 10 days from the date Margaret Pahl *said they would be available.* When, in fact, they were not even available until the 7th. So we actually filed a day early. (*Emphasis supplied*). *Id*., p. 13.

> So I think it's clear that the petitioners have met their burden of establishing that this Court has jurisdiction and that they timely filed this within 10 days *from the date that this opinion was available to them or could have been available to them* -- within 10 days from the date the City secretary who is required to keep these and file them in their office *actually said they would be available in that office. There's no other way we could readily ascertain when they are filed.* (*Emphasis supplied*). *Id*., p.15.

Mr. John Jacks testified at the hearing for the BOA. He is the Executive Secretary for the Board of Adjustment. *Id*., p. 40. As Executive Secretary he oversees the staff that assists the Board in conducting their meetings and also attest to the minutes. *Id*. Mr. Jacks testified that at a

subsequent meeting of the Board of Adjustment, the minutes from the previous meeting are approved by the Board. *Id.*, p. 41. The chair then signs the minutes and returns it to the board's liaison, Ms. Sandra Gonzalez, who drafted the minutes. Ms. Gonzalez keeps the minutes in her possession in the Board's office. *Id.* Mr. Jacks testified that the minutes were filed with the Board's office immediately upon the approval:

> Q (By MR. LÓPEZ) Going to show you Defendant's Exhibit Number 1 which is the April 21st, 2014 minutes. When were those minutes approved?
>
> A These minutes were approved on May 5th, 2014.
>
> Q Okay. And when were they filed with the Board?
>
> A Immediately upon approval.
>
> Q With the Board's office?
>
> A With the Board's office.

*Id.*, 46-47.

Moreover, Mr. Jacks testified that he did not attest to the minutes on May 5, 2014, because he was not available during the Board's meeting on that day, when the minutes were approved. *Id.*, p. 44.

-23-

The county court then heard the Appellees' challenge to the Board's decision, overruled the BOA's plea to the jurisdiction and reversed the Board's decision. CR 671.

## SUMMARY OF THE ARGUMENT

The county court erred in its judgment that the writ of certiorari was timely filed. The ten-day appeal timetable to seek judicial review of the BOA's decision pursuant § 211.011(b) of the Local Government Code was triggered by the filing in the BOA's office the minutes reflecting the vote and decision of the BOA. On May 2, 2014, the staff of Appellees' attorney, requested a copy of the BOA's minutes. The BOA approved the minutes and filed them in the Board's office on May 5, 2014, immediately after they were approved. Appellees' filed the writ of certiorari 11 days after the minutes were filed with the BOA's office. The writ was untimely as a matter of law and deprived the county court of jurisdiction.

Section 211.011(b) does not support Appellees' contentions that the appeal deadline was triggered by a City employee's statement about when the minutes may be available for delivery or by the date a City employee complies with Appellees' request for a copy of the minutes. The ten-day period in which to file an appeal is jurisdictional and commenced running when the minutes

-24-

were filed in the board's office and not when the secretary attested to the minutes. *Arguendo*, even if anyone was somehow misled by a Board employee, the trial could not have acquired jurisdiction through estoppel. The county court's judgment should be reversed because it acted without jurisdiction when it reversed the BOA's decision.

Alternatively, the county court's judgment should be reversed because it had no authority in writ of certiorari proceedings to review and decide the question Appellees presented to the BOA: whether the BOA had the power to declare itself without jurisdiction on the basis that the appealing party had failed to pursue all administrative remedies in a prior appeal to the BOA. The BOA's has limited statutory authority to hear administrative appeals and passing on the question whether its appellate authority is barred by a party's alleged failure to exhaust administrative remedies is not one of them.

Because the BOA had no authority to review and decide the exhaustion question, the county court also lacked authority to decide the issue. The only question before the county court was the legality of the Director's rescission of the railing permit. The only permissible inquiry before the county court, and also before this Court, is whether the evidence is such that the BOA could have reached no other decision but to uphold the Director's rescission of the

permit. The county court ruled that the BOA had no jurisdiction to do what it is specifically empowered to do by law. The county court acted in excess of its jurisdiction and the judgment should be reversed.

Lastly, alternatively, assuming that the county court acted within its jurisdiction, this Court should remand the case to the BOA. Two issues were before the BOA on April 21, 2014: the appeal of the Director's rescission of the railing permit, and alternatively, an application for a variance to install a railing. The BOA did not reach the application of a variance because it modified the Director's decision and allowed the installation of the railing. A remand to the BOA is proper to allow the BOA to decide that issue before the county court acquires jurisdiction to review the application for a variance.

## ARGUMENT

### A.    Standard of Judicial Review.

Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228, (Tex. 2004). When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, the appellate court take as true all evidence favorable to the

nonmovant. *Id.* The court indulges every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

A decision of a board of adjustment may be challenged by the filing of a petition in district court stating that the decision of the board is illegal in whole or in part and specifying the grounds of the illegality. Tex. Loc. Gov't Code § 211.011(a); *Town of Bartonville Planning and Zoning Bd. of Adjustments v. Bartonville Water Supply Corp.*, 410 S.W.3d 23, (Tex. App.—San Antonio 2013, pet. denied).; *City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex. App.—San Antonio 2005, no pet.). "On the presentation of the petition, the court may grant a writ of certiorari directed to the board to review the board's decision." Tex. Loc. Gov't Code Ann. § 211.011(c). If a writ is granted, the board must file a return concisely stating "any pertinent and material facts that show the grounds of the decision under appeal." *Id.* at § 211.011(d).

The district court sits only as a court of review, and the only question before it is the legality of the [board of adjustment] order." *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006); *see* also *City of Alamo Heights*, 158 S.W.3d at 549. "The board's order is presumed to be legal, and the party attacking the order has the burden of establishing its illegality." *City of Alamo*

*Heights*, 158 S.W.3d at 549. To establish that the board's order is illegal, "the party attacking the order must present a very clear showing of abuse of discretion." *City of Dallas*, 189 S.W.3d at 771; *see* also *City of Alamo Heights*, 158 S.W.3d at 549. The board abuses its discretion if it acts without reference to any guiding rules and principles or clearly fails to analyze or apply the law correctly. *City of Dallas*, 189 S.W.3d at 771; *City of Alamo Heights*, 158 S.W.3d at 549.

With regard to factual matters, the reviewing court must not put itself in the position of the board and substitute its findings for those of the board, even if the overwhelming preponderance of the evidence is against the board's decision. *City of Dallas*, 189 S.W.3d at 771; *Christopher Columbus Street Market LLC v. Zoning Bd. of Adjustments of the City of Galveston*, 302 S.W.3d 408, 416 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *City of Alamo Heights*, 158 S.W.3d at 549. A party attacking the legality of the board's order must establish that the board could reasonably have reached but one decision, and not the decision it made. *City of Dallas*, 189 S.W.3d at 771; *Christopher Columbus Street Market LLC*, 302 S.W.3d at 416. A board does not abuse its discretion "if it bases its decision on conflicting evidence and

some evidence supports its decision." *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998); *see* also *Christopher Columbus Street Market LLC*, 302 S.W.3d at 416.

## B.      Issue No. 1.

### The Trial Court Erred in Denying the Board of Adjustment's Plea to the Jurisdiction.

Jurisdiction to challenge a board of adjustment's decision exists upon filing a petition within ten days of the board's decision. *Tellez v. City of Socorro*, 226 S.W.3d 414 (citing *Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 (Tex. 1993) (per curiam).  Section 211.011(a) of the Local Government Code requires that a petition must be presented within 10 days after the date the decision is filed in the board's office. Tex. Loc. Gov't Code § 211.011(a).  This requirement is jurisdictional. *Sanchez v. Bd. of Adjustment*, 387 S.W.3d 745, 748 (Tex. App. El Paso 2012, *writ denied*)(citing *Tellez*).

In *Sanchez*, the court of appeals considered the meaning of "decision" in the context of section § 211.011(b). The court of appeals was required to answer whether filing an electronic recording of the Board's meeting triggered the timetable to seek judicial review of the board's

decision. In doing so, it noted that section 211.011(b) "does not provide that the appellate timetable begins running from the date the decision is made by the board of adjustment, but rather from the date the decision is filed in the board's office." *Id.*, at 751. Because Section 211.011(b) does not define "decision" nor does it require that the decision be in writing, the court of appeals was also required to interpret that term. The court of appeals, considered sections 211.008(f) and 211.011(b), the history of the statute and the consequences of the possible constructions, and concluded that the term "decision" meant the board of adjustment's minutes reflecting a vote on a particular question and the records related to that decision. *Id.*, at 753. The court of appeals then held that the writ of certiorari was timely because it was filed within ten days after the Board filed its approved minutes. *Id.*, 754.

Notably, *Sanchez*, does not stand for the proposition that the timetable to appeal is triggered by a City employee's statement about when the minutes would be available for delivery or by a City employee's compliance with a request for a copy of the minutes, as Appellees contend. Here, Appellees requested from Ms. Pahl a copy of the minutes

of the Board of Adjustment hearing held on April 21, 2014, at "her earliest convenience."  Ms. Pahl complied with the request on May 7, 2014, after informing Appellees on May 2, 2014, that the minutes were "on the agenda for Board consideration and adoption on Monday, May 5th" and the "soonest they will be available is Tuesday morning. I'll let you know." As noted, the minutes were delivered on May 7, 2014, well within the time allowed to seek judicial review of the Board's decision. It appears that Appellees erroneously concluded that the timetable to appeal ran from the time a copy the minutes were delivered to them as requested or when they were attested by the BOA's executive secretary on May 7, 2014.

The conversation between Ms. Pahl and Mr. Earl's staff took place in the context of Mr. Earl's staff requesting a copy of the minutes. Ms. Pahl did not represent that the minutes were filed by the Board either on May 6 or May 7, 2014. In fact, she did not state when the minutes were going to be filed and the record does not show that Appellees made any attempt after May 2, 2014, to find out when the minutes were filed. It appears that Ms. Marshall understood the difference between approving

the minutes and filing them with the Board when she asked Ms. Pahl: *"has there been a filing of the Board's decision with your office yet? Or will that not occur until the minutes of the meeting are approved*? Even if Ms. Pahl's conversation, or lack thereof, suggests that Mr. Earl's staff was misled, which they were not, a court cannot acquire subject-matter jurisdiction through estoppel. *Boswell v. Bd. of Adjustment & Appeals*, (Tex. App. Corpus Christi July 16, 2009) (*citing Wilmer-Hutchins Indep. Sch. Dist.*, 51 S.W.3d 293, 294 (Tex. 2001). Thus, Appellees did not establish that the writ of certiorari was filed within 10 days from the date the minutes were filed in the board's office.

Section 211.008(f) of the Local Government Code provides that the Board's minutes and records shall be filed immediately in the board's office and are public records. Tex. Local Gov't Code § 211.008(f). The BOA's evidence conclusively established that the minutes for the April 21, 2014, meeting were approved on May 5, 2014, and were immediately filed in the board's office as required by § 211.011(b). Therefore, the writ of certiorari, which was filed on May 16, 2014, 11 days after the minutes were filed in the Board's office, did not confer the county court subject-

matter jurisdiction to review the BOA's decision. The county erred in denying the plea to the jurisdiction.

**C.    Issue No. 2.**

**The County Court Erred in Reversing the Board's Decision by Finding That the Board of Adjustment Exceeded its Jurisdiction When it Rejected Appellee's Exhaustion Argument and Instead Exercised its Statutory Authority to Review the Zoning Decision in Question.**

A decision of a board of adjustment may be challenged by filing a petition in a district or county court stating that the board's decision is illegal, in whole or in part, and specifying the grounds of the illegality. Tex. Loc. Gov't Code § 211.011(a). The county court may reverse or affirm, in whole or in part, or modify the decision that is appealed.

Here, the only action the Appellees filed was a writ of certiorari challenging the BOA's decision. The live pleading before the county court was the Second Amended Writ of Certiorari. The Appellees did not file any independent action challenging the BOA's authority to decide the appeal and, alternatively, the variance. *See Christopher Columbus St. Mkt. LLC*, 302 S.W.3d 415 (A writ of certiorari, if independently asserted, is an independent and separate cause of action.).

In the writ of certiorari, the Appellees challenged both the legality of the BOA's decision and the BOA's jurisdiction to decide the issues. The county court denied all Appellees' challenges but one: the jurisdictional challenge. The county court found that the BOA did not have jurisdiction to consider or hear the appeal and reversed the BOA's decision. Only two bases for the jurisdictional challenge were raised in the writ of certiorari. First, Appellees alleged that, in relation to the BOA's January 13, 2014, decision, the BOA had no jurisdiction to hear the matter because Torres failed to exhaust the administrative remedies. Second, the Appellees alleged that the BOA was "jurisdictionally precluded" from granting a variance. Because the county court did not state the basis of its finding of lack of jurisdiction, we will discuss both grounds next.

1. **Request for Variance**.

Under state law, a local board of adjustment may authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done .... Tex. Local Gov't Code § 211.009(a)(3). In San Antonio, the Board's ability to

grant variances is regulated by the UDC, § 35-482(3). The record conclusively establishes that the BOA did not reach the application for a variance. The case was submitted to the BOA with the variance application to be decided in the event the BOA denied the appeal on the revocation of the fence permit. During the BOA's consideration of the railing permit, the issue arose whether the BOA had decided the same issue during the January 13, 2014 hearing. During the hearing, Torres amended her application by modifying the design of the proposed railing. The BOA agreed that the railing as modified was not the same structure that it had reviewed on January 13, 2014. The BOA then modified the Director's decision on permit #1951114, allowed the railing, and found that the railing, with the modified design, "is not to be considered a sports fence as was earlier discussed and described in previous hearings." Because the railing was not a sport fence, it was not subject to the twenty-foot setback requirement. Thus, the application for a variance from the twenty-foot setback requirement for sport fences became moot and was not considered by the BOA.

Because the BOA did not decide the variance application, there was no decision that involved a variation from, or a modification of a zoning ordinance, hence there was no action of the BOA which was appealable by

certiorari, as provided for in section 211.011(b). Thus, the county court was without jurisdiction to review the legality of the application for a variance. *Id.* Tex. Loc. Gov't Code § 211.011(f); *City if Dallas*, 189 S.W.3d 771 (the only question before the board of adjustment was the legality of the board's decision.). Because the county court's judgment that the BOA lacked jurisdiction could not have been based on the application for a variance, the only remaining basis to support the county court's judgment is Torres' failure to exhaust the administrative remedies.

**2.     The BOA Had No Jurisdiction to Decide the Failure to Exhaust Administrative Remedies Question and Neither Did the County Court.**

Appellees filed this suit only pursuant to the statutory provisions pertaining to writs of certiorari. § 211.011(b); *see* Second Amended Petition ("The court has jurisdiction over these proceedings pursuant to the provisions of Chapter 211, and specifically Section 211.011, Texas Local Government Code."). CR 587 . In this proceeding, the county court sat as a court of review and it had no jurisdiction to review the question whether the Board should have determined that Torres was required to pursue all administrative remedies prior to the BOA's review of Torres' appeal. As previously noted, the

only question before the Board was the legality of the board's decision. *Vanesko*, 189 S.W.3d 771; *Bartonville*,, 410 S.W.3d 29.

*Bartonville* involved an application by BWSC, a water supply corporation, for a permit to construct a water tower. The Town of Bartonville denied BWSC's application. BWSC appealed the Town's denial of the building permit application to the Town's Board of Adjustment. During the hearing before the Board of Adjustment, BWSC argued that the Town erred in denying its application because the Town should have determined that BWSC is not subject to the Town's zoning ordinance. The Board of Adjustment denied BWSC's appeal. BWSC appealed by filing a writ of certiorari and an appeal to district court followed. The writ of certiorari challenged the Board of Adjustment's decision alleging that under the Texas Water Code the City lacked authority to impose its zoning ordinance on BWSC and the ordinance was therefore unenforceable. The county court agreed with BWSC, reversed the Board of Adjustment's decision, and granted the permit to build a water tower. *Id*. 410 S.W.3d 25-26.

In reversing the trial court judgment, this Court held that neither the Board of Adjustment nor the trial court had jurisdiction to consider BWSC challenges to the Town's decision. The Court reasoned that the Town and the

Board of Adjustment had only been given authority to ensure the ordinances are followed; and the trial court's jurisdiction in a writ of certiorari was limited to review the legality of the board's order which is the only question that may be raised by a petition for writ of certiorari. *Id.*, 410 S.W.3d 30. *See* also, *West Texas Water Refiners, Inc. v. S&B Beverage Co.*, 915 S.W.2d 623, 626-27 (Tex. App.--El Paso 1996, no writ)(holding that a challenge to the jurisdiction of a board of adjustment is a collateral attack that can be challenged outside the statutory provisions applicable to writs of certiorari); and *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250, (Tex. App. San Antonio 2006).

The Court's reasoning in *Bartonville* is equally applicable to the case at bar. At the outset, we note that the BOA was authorized to consider Torres' appeal. It is without question that Torres was a "person aggrieved by the decision" of the Director to rescind, based on error, the permit that the Director had previously issued her. *Id.* § 211.010(a). The Director was the official charged with the duty to receive applications and issue permits. City of San Antonio, Code of Ordinances, §§Sec. 10-1, 10-5(b). He also was the decisionmaker regarding revocations of permits. UDC, § 35-406. Section 35-406 specifically provides that the process to appeal the Director's decision to

-38-

rescind a permit is provided by section 35-481 of the UDC, that is, an appeal to the board of adjustment. *Id.*

The plain language of the statute indicates the board is vested with the authority to "hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official" and make the "correct" decision, including reversing and modifying a previous order, decision, or determination. Tex. Loc. Gov't Code §§ 211.009(a)(1), 211.009(b)(1). Thus, the BOA acted within its authority when it interpreted the fencing-related ordinance in light of the amended application for a fence, modified the Director's decision and allowed the permit.

Nothing in Chapter 211 of the Local Government Code, however, gives authority to the BOA to determine the administrative remedies available for Torres to pursue in order to appeal from the Director's decision or from the BOA's decision. The power to remedy a party's failure to exhaust administrative remedies is simply outside the BOA's statutory powers.

The exhaustion rule requires that plaintiffs pursue all available remedies within the administrative process before seeking judicial relief; and a plaintiff's failure to do so deprives a court of jurisdiction. *See Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex. 1985). Thus, the only remedy in such a

case is necessarily judicial, not administrative. The judicial remedy for a party's failure to exhaust administrative remedies available under section 211 of the Local Government Code generally exists in the form of challenge to the trial court's subject matter jurisdiction, which if successful, prevents the trial court from reviewing a Board's decision. *See El Dorado Amusement Co.*, 195 S.W.3d 250; *West Texas Water Refiners*, 915 S.W.2d 626-27. *Abbott v. City of Paris*, 429 S.W.3d 99, 101-102 (Tex. App. Texarkana 2014). Certainly, that remedy was available to Appellees through judicial review outside the statutory provisions applicable to writs of certiorari, regardless of whether the BOA decided Appellees' exhaustion question. *See*, e.g., *West Texas Water Refiners, Inc.,* 915 S.W.2d 626-27.

Although the BOA has quasi-judicial powers, the exercise of those powers is by virtue of the statue and ordinance under which it operates. *See Lufkin v. McVicker*, 510 S.W.2d 141, 144 (Tex. Civ. App. Beaumont 1973). It is beyond the authority granted to the BOA by Chapter 211 of the Local Government Code and the UDC to declare itself without jurisdiction on the basis of an appellant's failure to pursue administrative remedies.

If the BOA had refused to hear Torres' appeal, as Appellees requested, the decision of the BOA would have been null and void because the BOA would

have exceeded its authority because the Board's authority did not include the determination whether the appealing party had exhausted all available remedies as a condition of the Board's review of the Director's decision. *See Bartonville*, 410 S.W.3d 30.

Moreover, pursuant to § 211.010(b) of the Texas Local Government Code and the UDC, § 35-406, Torres was required to appeal the Director's decision to the board of adjustment. Had the BOA determined that Torres had failed to exhaust the remedies available to her, as requested by Appellees, Torres would have been effectively deprived from obtaining a judicial review of the BOA's decision on a question properly before it. Under the banner of the exhaustion rule, the county court's judgment defeated the very purpose of the exhaustion rule which is to seek to assure that the appropriate body adjudicates the dispute. *See Essenburg v. Dallas County*, 988 S.W.2d 188, 41 Tex. Sup. J. 1399 (Tex. 1998).

Because the BOA had no authority to review and decide the exhaustion question, the county court also lacked authority to decide the issue. *See Bartonville*, 410 S.W.3d 30-31. The only question before the county court was the legality of the Director's rescission of the railing permit. The only permissible inquiry before the county court, and also before this Court, is

whether the evidence is such that the BOA could have reached no other decision but to uphold the Director's rescission of the permit. The county court ruled that the BOA had no jurisdiction to do what it is specifically empowered to do by law.

As a matter of law, the BOA was authorized to make the "correct" decision, including modifying, reversing a previous order, decision, or determination. In exercising that authority, the BOA did not abuse its discretion and it cannot be said that, on this record, it acted without jurisdiction when it failed to review and decide the exhaustion question urged by Appellees. Reversal is proper because the county court exceeded its jurisdiction when it found that the BOA lacked jurisdiction to hear the appeal from the Director's decision on a zoning issue.

**Issue No. 3**

**In the Event this Court Affirms the County Court's Decision, a Remand to the Board of Adjustment for Consideration of the Variance Application Is Proper and Consistent with the Exhaustion of Administrative Remedies Rule.**

Alternatively, assuming that the county court acted within its jurisdiction, this Court should remand the case to the BOA. Two issues were before the BOA on April 21, 2014: the appeal of the Director's rescission of the railing permit, and alternatively, an application for a variance to install a

railing. The BOA did not reach the application of a variance because it modified the Director's decision and allowed the installation of the railing. A remand to the BOA is proper to allow the BOA to decide that issue before the county court acquires jurisdiction to review the application for a variance. *See Winn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ) ("It is settled that the administrative remedies provided by Local Government Code section 211.009-.010 . . . must be exhausted before matters regarding nonconforming uses may be brought before the courts."); *See El Dorado Amusement Co.*, 195 S.W.3d 250.

## PRAYER

Appellant, Board of Adjustment for the City of San Antonio prays that this Court reverse the county court's judgment and render judgment in its favor. Appellant also prays the Court grant it any other relief to which it may be entitled.

Respectfully Submitted,

LAW OFFICES OF ALBERT LÓPEZ
14310 Northbrook Dr., Suite 200
San Antonio, Texas 78232
Telephone: (210) 404-1983
Fax: (210) 404-1990

By: /s/ Albert López
ALBERT LÓPEZ
State Bar No. 12562350
alopezoffice@gmail.com
ATTORNEY IN CHARGE FOR
DEFENDANT BOARD OF ADJUSTMENT
FOR THE CITY OF SAN ANTONIO

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served pursuant to the rules upon David L. Earl, 745 East Mulberry, Mailbox 16, San Antonio, Texas 78212 on July 8, 2015.

/s/ Albert López
ALBERT LÓPEZ